UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

RENE TELLIER,

                    Petitioner,             <u>OPINION</u>

      -against-                97 Civ. 8747 (MGC)

UNITED STATES OF AMERICA

                    Respondent.
-------------------------------X

CEDARBAUM, J.

    Rene Tellier petitions to vacate his conviction pursuant to 28 U.S.C. § 2255.  The grounds asserted are: (1) he was denied effective assistance of counsel and (2) he was denied a fair trial as a result of prosecutorial misconduct.  Petitioner also seeks discovery on those claims.  For the reasons discussed below, petitioner's request for discovery and the petition to vacate his conviction are denied.

BACKGROUND

    On March 3, 1994, a jury found petitioner guilty of participating in a racketeering enterprise, racketeering conspiracy, using and carrying a firearm during and in relation to a crime of violence, robbery conspiracy, and using interstate commerce facilities in the commission of murder-for-hire.  Petitioner was sentenced on November 29, 1994 to life imprisonment, one consecutive term of

1

imprisonment of five years, an additional consecutive term of imprisonment of twenty years, and four concurrent terms of imprisonment of twenty years.  Petitioner, represented by the same counsel for both trial and direct appeal, appealed from his conviction on several grounds, including that the government failed to disclose exculpatory evidence.  On May 10, 1996, the Second Circuit issued an unpublished summary order affirming petitioner's conviction.  United States v. Tellier, Nos. 94 Cr. 1647, 94 Cr. 1687, 95 Cr. 1014, 94 Cr. 1451 (2d Cir. 1996).  On October 21, 1996, the United States Supreme Court denied his petition for a writ of certiorari. Tellier v. United States, 519 U.S. 955 (1996).

Petitioner filed an initial Section 2255 petition on October 19, 1997, and amended petitions on January 28, 1999 and April 4, 2000.  Petitioner also filed a motion to amend his petition on January 14, 2002.  On March 7, 2005, petitioner joined codefendant Robin Tellier's Fed. R. Civ. P. 60(b) motion for relief from judgment on the basis of the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004).

DISCUSSION

I. Timeliness of Claims

Strict time limits govern motions for relief under Section 2255:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner's first petition was timely filed within one year of the date on which his conviction became final.  The subsequent amendments to that petition, however, were submitted more than two years later.  Petitioner argues that the amendments are timely because under Fed. R. Civ. P. 15(c), they relate back to the filing date of the first petition.

Rule 15(c) provides that an amended pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  The Supreme Court

has held that amendments to a Section 2255 petition will only
relate back to the original petition under Rule 15(c) if the
new claims and the claims asserted in the original petition
"are tied to a common core of operative facts."  <u>Mayle v.
Felix</u>, 125 S. Ct. 2562, 2574, 162 L. Ed. 2d 582, 598 (2005).
New claims in the amended petition that merely arise out of
the same "trial, conviction, or sentence" as the claims in
the original petition do not relate back to the original
petition filing date under Rule 15(c).  <u>Id.</u>  The Court
reasoned that "[i]f claims asserted after the one-year period
could be revived simply because they relate to the same
trial, conviction, or sentence as a timely filed claim, [the
statute's] limitation period would have slim significance."
<u>Id.</u> at 2573-74.

All of petitioner's amended claims relating to the
conduct of his counsel during the course of the trial are
untimely because they do not arise out of any conduct,
transaction, or occurrence that was set forth or attempted
to be set forth in the first petition and therefore do not
relate back to the filing date of that petition.  As newly
asserted claims filed after October 1997, those claims are
untimely because they were filed more than a year after the
date on which petitioner's conviction became final.  <u>See</u> 28
U.S.C. § 2255(1).  Petitioner does not allege any facts to

suggest that his claims are timely under any of the other one-year limitation periods listed in 28 U.S.C. §§ 2255(2)-(4).

Petitioner's untimely claims are: (1) that counsel failed to submit for the court's consideration petitioner's proposed jury voir dire; (2) that counsel failed to secure the attendance of Dominic DeVito to testify that William D'Angelo was the person "solely responsible for the murder" of Tina Smith; (3) that counsel failed to secure the attendance of Anthony Brown to testify regarding the Antonovich Fur robbery; (4) that counsel failed to secure the attendance of James Innes and Kerry Flaherty regarding the attempted murder of James Innes; (5) that counsel failed to object to the government's improper remarks during closing argument in relation to the murder-for-hire charge; (6) that counsel failed to secure the attendance of Ronald Bower to testify regarding the robbery of Sterns department store; (7) that counsel, without petitioner's consent, waived petitioner's right of confrontation by entering into stipulations with the government that conceded certain facts; (8) that counsel failed to challenge the perjury of government witnesses Charles Schrader and William D'Angelo; (9) that counsel failed to call and impeach the ADT security guard regarding the robbery of Consumer Distributors; (10)

that counsel failed to secure the attendance of witnesses who were identified in a redacted police report on the Manhattan Antonovich Furs store robbery; (11) that counsel failed to call Frank Rizzo or Candi Ku to testify that Robin Tellier was with them at a nightclub on the night of the Panuccio murder and failed to investigate and call Richard Conroy as a witness to testify that William Gabler told Conroy that Gabler murdered Panuccio; (12) that counsel failed to investigate and properly cross-examine government witness Kimberly Tellier; (13) that counsel failed to call an expert witness to confirm that petitioner's blood was not found anywhere at the scene of the attempted murder of James Innes, and failed to object to the government's remarks in closing regarding the attempted murder; and (14) that counsel failed to move for an inquiry into whether the special grand jury was validly extended and whether there were any other structural irregularities in connection with the special grand jury.

Petitioner's claims for relief under the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004) and under United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), opinion vacated, 165 F.3d 1297 (10th Cir.)(en banc), cert. denied, 527 U.S. 1024 (1999), also do not provide a basis for the relief he seeks.  The Second

Circuit has explicitly held that <u>Crawford</u> is not retroactive on collateral review.  <u>Mungo v. Duncan</u>, 393 F.3d 327, 336 (2d Cir. 2004).  As for the second claim, <u>Singleton</u> was never binding authority in this jurisdiction, and has been overturned by the Tenth Circuit.

## II.Ineffective Assistance of Counsel

Petitioner argues that his counsel provided ineffective assistance by (1) failing to investigate and present the testimony of two alibi witnesses, Howard and Linda Eskenazi, regarding the John Seychel and Charles Haverty homicides; (2) failing to introduce testimony to support the documentary evidence produced by petitioner showing that he purchased a car in Florida on December 4, 1987 and failing to request a continuance to locate and subpoena the witnesses to the car purchase; (3) failing to challenge at trial and on appeal the "hearsay" testimony of Bruce Rubino regarding the Haverty homicide; (4) failing to interview allegedly favorable witnesses Jerry Strivelli and Dominick Camuti about the Seychel and Haverty homicides; (5) failing to raise the government's suppression of a report by an eyewitness who saw two white males leaving the location where Tina Smith's body was found, despite petitioner's request that this issue be raised on a second Rule 33 motion and on appeal; (6) failing to raise the fact that William D'Angelo, a witness to the Smith homicide, allegedly testified falsely as to whether he was paid for acting as an informant; (7) failing to object to the government's pretrial motion to admit evidence of forty uncharged crimes committed by petitioner; and (8) failing to challenge the prosecution's failure to prove beyond a reasonable doubt that the attempted murder-for-hire of James Innes was in furtherance of petitioner's racketeering activity.

In order to prevail on an ineffective assistance of counsel claim, the defendant must "(1) show that counsel's conduct fell below 'an objective standard of reasonableness' under 'prevailing professional norms,' and (2) 'affirmatively prove prejudice.'" <u>United States v. Kirsh</u>, 54 F.3d 1062, 1071 (2d Cir. 1995)(quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 693 (1984)).  There is "a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance."
<u>Strickland</u>, 466 U.S. at 689.  Furthermore, "[a]ctions or
omissions by counsel that might be considered sound trial
strategy do not constitute ineffective assistance."  <u>Mason</u>
<u>v. Scully</u>, 16 F.3d 38, 42 (2d Cir. 1994)(quoting <u>Strickland</u>,
466 U.S. at 689).  To show prejudice, a petitioner "must
show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the
proceeding would have been different. A reasonable
probability is a probability sufficient to undermine
confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.
Petitioner's claims fail because he cannot show that he was
prejudiced by any of counsel's alleged errors.

A. Seychel and Haverty Homicides

Petitioner raises several claims related to the John
Seychel and Charles Haverty homicides.  First, petitioner
argues that counsel was ineffective for failing to object
to Bruce Rubino's "hearsay" testimony recounting
petitioner's statements about the homicides.  However,
petitioner's statements to Rubino are not hearsay under
Fed. R. Evid. 801(d)(2) and counsel therefore had no reason
to object to the presentation of this testimony.  Second,
petitioner alleges that counsel was ineffective for failing
to interview Jerry Strivelli and Dominick Camuti about the
Seychel and Haverty homicides.  Finally, petitioner argues
that counsel was ineffective for failing to investigate and
present the testimony of two alibi witnesses, Howard and
Linda Eskenazi, who would have testified that petitioner
was in Florida on December 3 and 4, 1987.  Their testimony

would also have supported the documentary evidence produced by petitioner showing that he purchased a car in Florida on December 4, the day of the homicides.

Petitioner has failed to show that he was prejudiced by counsel's allegedly ineffective assistance, that is, petitioner has failed to show that there is a reasonable probability that the result of the proceeding would have been different if counsel had not committed the alleged errors.  The Seychel and Haverty homicides were just two of over a dozen predicate acts set forth in the racketeering charge in the indictment.  The errors alleged by petitioner in this claim and elsewhere in his petition do not affect the jury's findings that petitioner committed the two predicate acts of conspiring to rob the Antonovich Furs store in Manhattan and conspiring to rob Consumer Distributors in Queens.  Therefore, even if counsel's alleged ineffective assistance might have altered the jury's finding that petitioner committed the Seychel and Haverty homicides, this finding would not have altered the verdict against petitioner on the racketeering charges.

B. Tina Smith Homicide

Petitioner argues that counsel was ineffective for failing to raise on appeal the government's suppression of

an allegedly exculpatory report which stated that a witness saw two white males leaving the location where Tina Smith's body was found.  Petitioner argues that this evidence would have contradicted William D'Angelo's testimony that there were three people present when Smith's body was dumped. Petitioner also argues that counsel was ineffective for failing to argue on appeal that William D'Angelo, a witness to the Smith homicide, testified falsely that he was not paid for acting as an informant.

However, petitioner cannot show that he was prejudiced by counsel's alleged errors.  There is no reasonable probability that raising these issues would have resulted in a different outcome at trial or on appeal.  William D'Angelo's motives to lie were fully revealed at trial during counsel's cross-examination of D'Angelo about his use of drugs, his fear of being arrested, his criminal record and money he received from the government.  The additional impeachment evidence that petitioner claims should have been offered at trial would have done little to cast doubt further on D'Angelo's testimony.  Moreover, none of the evidence petitioner cites would have outweighed the strong evidence corroborating D'Angelo's testimony about the Smith homicide, including the testimony of a gas station attendant who identified petitioner as the person

who crashed his car into the gas tank island on the night of the homicide.  The attendant furthermore observed that the interior of the car was covered with blood.  A New York police officer also testified that he saw the car that petitioner used to commit the murder after petitioner and D'Angelo had set it on fire.

## C. Evidence of Uncharged Crimes

Petitioner argues that counsel was ineffective for failing to object to the government's pretrial motion to admit evidence of uncharged crimes committed by petitioner. Petitioner notes that counsel for codefendant Robin Tellier did eventually object to admission of further uncharged crime evidence during the trial, after sensing the prejudicial impact of this evidence on the jury.  However, petitioner does not show that counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms.  "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance."  Mason v. Scully, 16 F.3d 38, 42 (2d Cir. 1994)(quoting Strickland, 466 U.S. at 689). Counsel's actions were taken in furtherance of his strategy to provide grounds for severance.

Furthermore, petitioner fails to show that he was prejudiced by counsel's action.  Even if counsel had objected to the admission of this evidence, it is likely that most of this evidence would have been admitted.  After counsel for codefendant Robin Tellier objected to the admission of further uncharged crimes evidence during the trial, some uncharged crime evidence was admitted over the objection in order to allow the government to prove the existence of the racketeering enterprise.  Petitioner also fails to allege which uncharged crime evidence prejudiced him and how the exclusion of this evidence might have altered the jury's verdict.  In short, there is no reasonable probability that the result of the proceeding would have been different if counsel had objected to the admission of the uncharged crime evidence.

### D. Murder for Hire

Petitioner alleges that counsel was ineffective for failing, on direct appeal and at trial, to challenge the prosecution's failure to prove beyond a reasonable doubt that the attempted murder-for-hire of James Innes was done in furtherance of petitioner's racketeering activity. However, the government was not required to prove a connection between the murder-for-hire and the racketeering

activity because the murder-for-hire charge was not
submitted to the jury as a predicate act of racketeering.

### V. Government Misconduct

Petitioner argues that there was egregious and
pervasive government misconduct in this case that deprived
him of due process of law.  Petitioner may not now
relitigate claims of government misconduct that were raised
and addressed on direct appeal.  Riascos-Prado v. United
States, 66 F.3d 30, 33 (2d Cir. 1995).  Furthermore, for any
claims that were not raised on direct appeal, petitioner is
now barred from advancing these claims through a Section
2255 petition unless "he can show cause for his procedural
default and actual prejudice resulting from the error," or
state a claim of "actual innocence."  Id. at 34; Rosario v.
United States, 164 F.3d 729, 732 (2d Cir. 1998).  To
establish prejudice, both to overcome the procedural default
and to establish that any undisclosed information was
"material," petitioner must show that there is a "reasonable
probability" that the result of the trial would have been
different in the absence of the misconduct.  United States
v. Bagley, 473 U.S. 667, 682 (1985).

### A. Claims in Original Petition

Petitioner raised several claims of government misconduct in his first, timely-filed petition.  None of those claims were raised in petitioner's direct appeal.  Therefore, petitioner must show cause for his failure to raise those claims on appeal and must also show that he was prejudiced by the alleged errors.  Riascos-Prado, 66 F.3d at 34.

Petitioner first argues, based on the Department of Justice's response to his Freedom of Information Act ("FOIA") request, that the government failed to disclose exculpatory evidence from the FBI's records relating to the Phillip Panuccio homicide.  Petitioner argues that the government committed misconduct by failing to disclose two newspaper articles that were later released in response to petitioner's FOIA request.  Petitioner contends that these articles support the theory that Panuccio, a former bodyguard for the late "mob boss" Joseph Colombo, was murdered in connection with "the 5.8 million dollar Lufthansa Heist."  Petitioner also argues that the Department's letter responding to the FOIA request shows that the government failed to disclose exculpatory evidence from the FBI's records.  In the letter, the Department states that, because petitioner had an appeal pending before the Supreme Court at the time of his FOIA request,

14

some of the requested documents could not be released to him at that time, but that petitioner should resubmit his request since the appeal was concluded.

The evidence proffered by petitioner does not support the conclusion that the government committed misconduct. The newspaper articles petitioner refers to are public documents that contain no exculpatory evidence.  As for the remaining materials in the FBI file that were not released to petitioner because he had an appeal pending at the time of his FOIA request, the letter petitioner proffers shows only that these documents are related to petitioner's case. There is no basis to conclude from the letter that these documents were not previously disclosed to the defense at trial or that they are exculpatory.

Petitioner next argues that the government withheld potentially exculpatory records from the court's in camera inspection of the government's files.  Petitioner bases this allegation on an email from the FOIA contact for the Southern District of New York addressed to an Assistant United States Attorney.  The email states that, with regard to petitioner's criminal case, "Records Management has obtained the following information regarding this case (physical files): Forty (40) boxes and several file cabinets are in the building.  There are pending appeal(s).

Mr. Guy Petrillo knows the particulars." Petitioner alleges, without any evidentiary support, that the government provided the forty boxes for in camera inspection prior to the trial, but that the material in the file cabinets was not provided. However, there is no reason to conclude from the proffered email that any of these documents were not provided to defense counsel at trial or not provided for in camera review.

Finally, petitioner alleges that the government improperly counseled Thomas Hawco, a witness to the Antonovich Furs store robbery in Brooklyn, to change his testimony at trial. The government allegedly counseled Hawco to describe the men that he observed robbing the Antonovich Furs store as "olive-skinned," not Hispanic. But, petitioner does not show that he was prejudiced by the alleged misconduct. At trial, petitioner questioned Hawco about the inconsistencies in his identifications and about Hawco's previous description of the robbers as "Hispanic," suggesting that Hawco's description changed after he had spoken with the police several times. In addition, the Antoniovich Furs robbery in Brooklyn was only one of more than a dozen predicate acts set forth in the racketeering charge in the indictment. The misconduct alleged by petitioner here and elsewhere in his motion to vacate his

16

conviction does not affect the jury's findings that petitioner committed the two predicate acts of conspiring to rob the Antonovich Furs store in Manhattan and conspiring to rob Consumer Distributors in Queens.  There is no reasonable probability that the verdict against petitioner on the racketeering charges would have been different in the absence of the government's alleged coaching of Thomas Hawco.

### B. Claims in February 1999 Amendments

In petitioner's 1999 amendments to the petition, petitioner adds several new claims of government misconduct. None of these claims were presented in petitioner's timely-filed first petition nor do they relate back to the filing date of that petition under Rule 15(c) because they do not arise out of any of the same conduct, transactions, or occurrences set forth or attempted to be set forth in the original petition.  The new claims are timely under 28 U.S.C. § 2255 only if they were raised within one year of the date on which "the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" or within one year from "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the

United States [was] removed."  28 U.S.C. §§ 2255(2),
2255(4).

Petitioner does not specify the date on which he
discovered the facts that support these claims.  Nor does he
explain why these facts could not have been discovered
earlier through the exercise of due diligence.  Nor does
petitioner allege that he was impeded from making this
motion by illegal government action.  The date on which
petitioner should have discovered the facts supporting these
claims through the exercise of due diligence is a factual
question.  Wims v. United States, 225 F.3d 186, 190 (2d Cir.
2000).  Petitioner has failed to offer any facts to support
the timeliness of these claims under Section 2255.
Moreover, petitioner has failed to show that he was
prejudiced by the alleged misconduct.

Petitioner first argues that the government suppressed
exculpatory evidence related to the Jindo Furs robbery.
Petitioner argues that the government failed to disclose
interviews with three eyewitnesses to the theft - David
Vermeal, John Venidis, and Renzy Holloway.  Petitioner,
however, does not provide copies of any documents describing
the alleged interviews.  The only report of a police
interview that petitioner does describe is not exculpatory.
The report, petitioner contends, states that Holloway, a

18

Bloomingdales' security guard, reported seeing three men placing fur garments in a Camero during the robbery. Petitioner does not provide a copy of the report.

Without citing to any documents or other information in possession of the government, petitioner argues that witnesses Vermeal and Venidis would have stated at trial that the robbers appeared to have black skin. Petitioner also alleges that Holloway would have stated that a security guard from his department, whose name Holloway refused to disclose unless subpoenaed, saw the robbers and said that they were all black males. Petitioner does not allege that these disclosures were contained in any government documents. Without any evidence that the government was in possession of this information, it is not possible to conclude that the government committed a <u>Brady</u> violation.

Petitioner also alleges that the government failed to disclose a printout of witness Basil Reece's 911 call about the Model Imperial Perfume robbery, and improperly allowed Reece to offer perjurious testimony at trial that contradicted his initial statements to the police. Petitioner alleges that Reece's in-court identification of petitioner as one of the robbers was inconsistent with Reece's failure to give a detailed description of the robbers in his 911 call on the night of the robbery.

19

However, Reece's testimony was not inconsistent with his
prior statements in the 911 call.  Reece's failure to
provide a full description of the robbers at the time of the
911 call, as the call was made while the robbery was in
progress and Reece was hiding in the bathroom after being
shot, does not support the claim that Reece committed
perjury at trial.  Petitioner also fails to show that the
alleged suppression of the 911 call transcript prejudiced
him.  The alleged inconsistencies between Reece's prior
statements to police and his trial testimony were explored
by defense counsel.  Reece was fully cross-examined at trial
about his prior statements in another police report, in
which Reece only described the robbers as "white males."
The additional impeachment evidence in the 911 call
transcript would have done little to cast further doubt on
Reece's in-court identification of petitioner.

Petitioner also alleges that the government suppressed
exculpatory evidence regarding the Model Imperial Perfume
robbery.  Petitioner argues that the government suppressed a
police report that allegedly shows that three individuals in
a blue van were arrested in connection with the Model
Imperial Perfume robbery.  Although petitioner fails to
provide any documentation to support his claim, the

undiscovered police report that petitioner cites[1] seems to be the same report that is cited by codefendant Robin Tellier in his Section 2255 petition.  This document does not present any evidence linking the detention of the three individuals in the blue van to the Model Imperial robbery. The report is therefore not exculpatory.

### C. Claims in April 2000 Amendments

In petitioner's 2000 amendments to the petition, he adds several new claims of government misconduct.  None of these claims was presented in petitioner's timely-filed first petition, nor do these claims relate back to the filing date of the original petition under Rule 15(c) because they do not arise out of any of the same conduct, transactions, or occurrences set forth or attempted to be set forth in the original pleading.  As with the claims presented in petitioner's February 1999 amendments, petitioner does not allege any facts to support the timeliness of these claims under Section 2255.  Moreover, petitioner has not shown that he was prejudiced by the alleged misconduct.

Petitioner argues that the government improperly offered into evidence the plea allocution of Michael

---

[1] The report is not included with petitioner's petition, however it is attached to codefendant Robin Tellier's amended petition as Exhibit MMM.

Ladgana, knowing that this allocution was based on a
defective indictment that was ultimately dismissed.
Petitioner alleges that at the time the allocution was
admitted, the government had an agreement with Ladgana to
dismiss the indictment against him because Ladgana was
wrongly charged as an adult instead of as a minor.  Although
petitioner's name was redacted from the plea allocution,
petitioner argues that he was the only defendant charged
with the murder-for-hire to which Ladgana pleaded guilty and
that petitioner therefore was clearly implicated in the
improperly-admitted allocution.

However, petitioner fails to show that this claim is
timely under 28 U.S.C. § 2255.  Furthermore, petitioner does
not show cause for failing to raise this claim on appeal.
The evidence supporting this claim was known to petitioner
as soon as the indictment against Ladgana was dismissed, yet
petitioner failed to raise this issue until April, 2000.

Petitioner also claims that the government knowingly
elicited perjury from Basil Reece and Charles Schrader about
the Model Imperial Perfume robbery, which resulted in
petitioner's wrongful conviction.  Petitioner now argues
that he is actually innocent of the Model Imperial Perfume
robbery and that, at the time of trial, the government was
aware that three other individuals driving a blue van had

been arrested in connection with this robbery.  Petitioner renews his argument that an undisclosed police report shows that the three individuals in the van were arrested in connection with the Model Imperial Perfume robbery.

First, petitioner fails to show that his claim is timely under 28 U.S.C. § 2255.  Petitioner does not explain why this police report could not have been discovered earlier through the exercise of due diligence, nor does petitioner assert any facts to support a credible claim of actual innocence.  See Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004)(instructing "district courts faced with untimely petitions in which the petitioner asserts his or her actual innocence to determine, in each case, whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence.").  Furthermore, this claim is without merit.  The report, as discussed in Part III.B, supra, is not exculpatory, nor does it show that Schrader or Reece committed perjury at trial.

Finally, petitioner alleges that the government failed to disclose the exculpatory statement of Dominic DeVito made during the government's pre-grand jury screening session.

Petitioner alleges that the government wrongly deemed the records containing the statement to be grand jury minutes in order to protect them from disclosure.

Petitioner fails to explain the content of DeVito's alleged statement and does not explain what record contains this statement or how the government wrongfully deemed the record to be part of the grand jury minutes.  The only statement by DeVito to which petitioner has previously referred in challenging his conviction was made in regard to the Tina Smith homicide.  To the extent that petitioner is referring to this statement, which was contained in the grand jury minutes, petitioner's claim was already raised and denied on direct appeal.  United States v. Tellier, Nos. 94 Cr. 1647, 94 Cr. 1687, 95 Cr. 1014, 94 Cr. 1451, at 12 (2d Cir. 1996) (unpublished summary order)(holding that the government had no obligation to turn over DeVito's grand jury testimony to the defense).

### D. Claims in January 2002 Amendments

Petitioner asserts several new claims of government misconduct in the 2002 amendments to his petition. Petitioner asserts that the facts supporting these new claims were discovered on September 28, 2001, when the FBI responded to petitioner's FOIA request with 1,511 pages of

documents.   Petitioner does not explain why these documents could not have been discovered prior to September 28, 2001 through the exercise of due diligence.   Petitioner also does not allege when his FOIA request was filed.[2]

Courts have found that a petitioner exercised due diligence by making a FOIA request within one year of the date that petitioner's conviction became final, see United States v. Smith, No. 90-296-18, 2000 WL 1268254, at *1 (E.D. Pa. Aug. 28, 2000); Edmond v. United States Attorney, 959 F. Supp. 1, 3-4 (D.D.C. 1997).   In contrast, a petitioner's failure to make a FOIA request within the limitations period, has been found to "suggest[], although it does not necessarily prove, that there has not been the requisite due diligence."   Ruiz v. United States, 221 F. Supp. 2d 66, 77 (D. Mass. 2002)(holding that petitioner who waited approximately eighteen months to file a FOIA request did not exercise due diligence); United States v. Harris, No. 97-34-P-H, 1999 WL 33117115, at *2 (D. Me. Nov. 1, 1999)(finding that petitioner who waited approximately eighteen months to file a FOIA request did not exercise due diligence) (magistrate judge opinion).   Petitioner does not allege that

---

[2] Petitioner does not state when the FOIA request that resulted in the release of these documents was filed.   Petitioner does state in a letter dated September 5, 2000 that he filed a FOIA request with the Justice Department prior to the filing of his initial Section 2255 petition in October, 1997.   It is not clear if the documents released on September 28, 2001 were received pursuant to petitioner's 1997 FOIA request.

this request was filed within one year of the date that
petitioner's conviction became final.  Petitioner does not
allege that the government failed to respond to the FOIA
request in a timely manner, such as to impede the timely
filing of these claims.  In short, petitioner has failed to
allege any facts to support the timeliness of these claims
under Section 2255.  Petitioner has also failed to show that
he was prejudiced by the government's failure to disclose
these materials.

Petitioner first alleges that the government suppressed
exculpatory evidence relating to the Tina Smith murder.
Petitioner alleges that on September 28, 2001, the FBI
released to him a Medical Examiner's serology lab report on
"Michele Johnson," who petitioner contends is the same
person as Tina Smith.  The report states that four specimens
from the decedent's body were tested for semen and that the
tests came back negative.  Petitioner contends that this
report casts doubt on William D'Angelo's testimony that
petitioner and the decedent engaged in sexual relations on
the night of the homicide.  Petitioner also uncovered a
report that states that the FBI lab was unable to reach any
conclusion as to the origin of the hairs found on the
clothing that the decedent was wearing at the time of her
death.

However, this evidence is not exculpatory.  The absence of semen in these samples does not mean that petitioner and Smith did not engage in sexual relations of some sort, as D'Angelo testified, on the night of the homicide.  The inconclusive FBI tests of the hairs similarly do not contradict the government's theory of the case or the evidence presented at trial.

Petitioner also alleges that the government suppressed exculpatory evidence relating to the Cassandra Designs, Dyansen gallery, and Brooklyn Antonovich Furs robberies. Petitioner alleges that on September 28, 2001 the FBI released to him a 911 call transcript in which a female caller identified the perpetrators of the Cassandra Designs robbery as two black males driving a Monte Carlo.  At the same time, the FBI also released a transcript of 911 calls made by witnesses to the Dyansen gallery robbery.  The second caller on the 911 transcript stated that three or four black and white men were the robbers.  The third caller stated that he observed that the perpetrators were three black males.  Finally, petitioner alleges that the government suppressed a police follow-up report relating to the Brooklyn Antonovich Furs robbery, in which an eyewitness to the robbery stated that four of the five robbers wore masks.  Petitioner argues that this report would have

impeached witness Thomas Hawco's testimony identifying the
skin color of the robbers.

However, petitioner fails to show that he was
prejudiced by these alleged nondisclosures.  First,
petitioner was not charged with the Dyansen gallery robbery,
nor did the government allege in the racketeering charge
against him that petitioner had any involvement in this
crime.  Petitioner therefore cannot show prejudice resulting
from the nondisclosure of evidence related to this crime.
Second, as for the 911 transcripts related to the Cassandra
Designs robbery and the Brooklyn Antonovich Furs robbery,
these crimes were two of more than a dozen predicate acts
set forth in the racketeering charge in the indictment.  The
errors alleged by petitioner here and elsewhere in his
motion to vacate his conviction do not affect the jury's
findings that petitioner committed the two predicate acts of
conspiring to rob the Antonovich Furs store in Manhattan and
conspiring to rob Consumer Distributors in Queens.
Therefore, the government's alleged failure to disclose the
911 transcripts would not have altered the verdict against
petitioner on the racketeering charges.

V. Discovery Request

Petitioner requests discovery in this case in order to

investigate fully his claims of government misconduct.
Petitioner has failed to show good cause for allowing him to
obtain the discovery he seeks.

CONCLUSION

For the foregoing reasons, petitioner's request for
discovery and petitioner's motion are denied.

Dated:    New York, New York
          September 20, 2006

                                  S/_____
                                    MIRIAM GOLDMAN CEDARBAUM
                                    United States District Judge