6/2/20

Dear Clerk,

Enclosed is my amended motion and
motion for appointment of counsel for
Judge Nathan's consideration.

Because the prison is on a complete lockdown
due to COVID-19 and the protests across
America over the George Floyd murder, I am
unable to get copies. I have served the
government as required by law.

Thank you for processing my motions for
the court's review.

Sincerely submitted

Rene Jelen

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENE TELLIER,

                Petitioner,                    MOTION FOR APPOINTMENT OF COUNSEL

   v.

UNITED STATES OF AMERICA,             CASE # 92 cr. 869 (Judge Nathan)

                Respondent.

## DECLARATION OF RENE TELLIER

Rene Tellier hereby declares under the penalty of perjury as follows:

1.   I am the petitioner who is named in the above captioned 28 U.S.C. Section 2255 Proceeding.

2.   I submit this declaration in support of my motion for the appointment of counsel.

3.   The second circuit court of appeals approved my application under Section 2244 for authorization to file a second or successive motion pursuant to 28 U.S.C. Section 2255 in the district court of conviction based on a Davis claim.

4.   Earlier this year, 2020, I filed my Section 2255 Motion with this Court and the case was assigned to Judge Alison Nathan.

5.   In March of 2020, I filed a motion to adopt my co-defendant Robin Tellier's position for a full resentencing hearing or permission to file an amended Section 2255 Motion.

6.   Shortly thereafter, Judge Nathan granted my motion directing me to amended my motion on or before June 9, 2020.

7.   Because the Bureau of Prisons is on a modified-lockdown schedule it makes it nearly impossible to research and draft and type the motion. I had to email the motion to a family member and then have it printed and copied and mailed back to me so I could meet the deadline. Plus, there were major errors in the hardcopy sent back to me, so I had to have those corrected so the Amended Motion could read properly and clearly on the subject matters. And as with the first hardcopy, Steven had to print and mail it to me by snail-mail service.

8.   I am not satisfied with the legal arguments because of my limited access to the law library computer for doing my legal research. The Bureau of Prisons has been running the facility on a modified schedule meaning prisoners are locked in their cells a majority of the day and only are permitted two-hours per day out of their cells to take showers, make phone calls, and use the computer. It appears that this schedule will continue most of the Summer and into possibly the Fall.

9.   After the government responds to my amended motion, I will have a small window of time to file a reply. It is for this reason I request the appointment of counsel so my legal position can be adequately presented to this Court.

10.   I am not financially capable of retaining an attorney to represent me after three decades of incarceration. I

Signed this ____ day of June, 2020.

Respectfully submitted,

Rene Tellier, Pro-se
Reg 32515-054 USP Allenwood
Box 3000, White Deer Pa 17887

cc: U.S. Attorney's Office
    One Saint Andrew's Plaza
    New York New York 10007

2

## Information for Inmate
## Population
## (06-01-2020)

SUBJECT:        National Lockdown

As previously indicated, community events continue to influence Bureau operations. Accordingly, the BOP has placed all institutions on a National Lockdown status until further notice. As information becomes available, it will be shared with the inmate population.

We will continue to provide two hot meals a day during this lockdown.

Staff will continue to make rounds throughout the units to address any needs or concerns.  Staff will continue to provide in cell activities.

We appreciate your cooperation and will return to modified operations as soon as possible

_____                    __6/1/2020__
H. Quay, Complex Warden .                     Date

7017 1450 0001 7743 8030

Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
### SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District SDNY | |
|---|---|---|
| Name (under which you were convicted): Rene Tellier | | Docket or Case No.: 92 Cr. 869 (MGC) |
| Place of Confinement: USP Allenwood Box 3000 White Deer Pa 17887 | Prisoner No.: 32515-054 | (Judge Nathan) |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) | |
| v.   Rene Tellier | | |

### MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   USDC SDNY   40 Foley SQ NCY 10007

   (b) Criminal docket or case number (if you know): 92 Cr. 869

2. (a) Date of the judgment of conviction (if you know): March 4, 1994

   (b) Date of sentencing: December 1994

3. Length of sentence: life plus 25 yrs consecutive

4. Nature of crime (all counts):

   18 USC 1962 (C) + (D)  (counts 1 + 2)
   18 USC 1959   (count 7)
   18 USC 1951   (counts 3 + 5)
   18 USC 924 (c)  (counts 4 + 6)

5. (a) What was your plea? (Check one)

   (1)   Not guilty ☒        (2)   Guilty ☐        (3)   Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)        Jury ☒        Judge only ☐

Amended Motion

Page 3

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8. Did you appeal from the judgment of conviction?    Yes ☑    No ☐

9. If you did appeal, answer the following:

(a) Name of court: Second circuit

(b) Docket or case number (if you know): 83 F3d 578 (1996); 1996 US Applex 10932 (92 cr.869)

(c) Result: Affirmed conviction

(d) Date of result (if you know): 5/10/96

(e) Citation to the case (if you know): see 9(b) above

(f) Grounds raised:

1. Violation of confrontation clause
2. Jurisdiction
3. Brady claim

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☑    No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know):

(2) Result: Affirmed conviction

(3) Date of result (if you know): 10/96

(4) Citation to the case (if you know): 519 US 955 (10/19/96)

(5) Grounds raised:

1. Confrontation clause

2. Brady claim

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☑    No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: SDNY

(2) Docket or case number (if you know): 92 cr. 869 (MGC)

(3) Date of filing (if you know): 10/19/97

Page 4

(4) Nature of the proceeding:  28 USC 2255

(5) Grounds raised:

1. Ineffective assistance of counsel

2. Jurisdiction

3. Brady violations

4. Prosecutorial misconduct

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ☐ No ☑

(7) Result:  Motion Denied

(8) Date of result (if you know):  9/20/06

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:  SDNY USDC

(2) Docket or case number (if you know):  92 cr. 869 (MGC)

(3) Date of filing (if you know):  1/13

(4) Nature of the proceeding:  Hazel Atlas proceeding

(5) Grounds raised:

Prosecutorial misconduct:
    bogus grand jury proceeding
    bogus grand jury transcripts

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ☐   No ☑

(7) Result:  Motion denies

(8) Date of result (if you know): 2/28/13   2013 U.S. Dist Lexis 30226

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:      Yes ☑ No ☐    1996 US App. Lexis 10932

(2) Second petition:    Yes ☐   No ☑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: The government and BoP destroyed the evidence which proved that the grand jury and grand jury transcripts were bogus.

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE:  See attached Addendum

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attached Addendum

(b) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☑

(2) If you did not raise this issue in your direct appeal, explain why: in Johnson 135 S ct 2551 The new rule of constitutional law announced (2015) and Davis 139 S ct 2319 (2019) was not available in 1994

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐  No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑    No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑    No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑    No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑    No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑    No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑  No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑  No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑  No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑  No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑  No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?     Yes ❑    No ❑
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
(a) At preliminary hearing:

(b) At arraignment and plea:

(c) At trial:

(d) At sentencing:

(e) On appeal:

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ❑ No ❑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ❑ No ❑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ❑   No ❑

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

ON NOVEMBER 5, 2019, the Second circuit granted my Section 2244 Application authorizing the filing of a Second-Successive Section 2255 filing based on Johnson, 135, Sct. 2551 (2015) and Davis, 139 sct 2319 (2019). Therefore, the instant motion is timely filed.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

 A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
  (1) the date on which the judgment of conviction became final;
  (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
  (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Page 14

Therefore, movant asks that the Court grant the following relief:

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

_____ (month, date, year).

Executed (signed) on _NOV 26 2019_ (date).

_Rere Jellier_
_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.   Amended       June 9, 2020
                                    Motion

                                         Rere Jellier

TRULINCS  32515054 - TELLIER, RENE - Unit: ALP-C-A
--------------------------------------------------------------------------------------------------------------

FROM: 32515054
TO:
SUBJECT: Addendum - 1 RT
DATE: 11/24/2019 07:38:48 PM

ADDENDUM TO RENE TELLIER APPROVED SECOND SECTION 2255 MOTION

GROUND ONE:  Based on United States v. Davis, 139 S.Ct. 2319 (June 24, 2019), Petitioner Rene Tellier's two

firearm convictions for violation of 18 U.S.C. Section 924(c) for predicate offenses of conspiracy to commit Hobbs

Act robbery must be vacated.

FACTS:   On November 5, 2019, the Court of Appeals for the Second Circuit granted Applicant Rene Tellier's

28 U.S.C. Section 2244 Application in which he sought permission to file a Second or successive Section 2255

Motion in the district court of conviction based on Johnson, 135 S.Ct. 2551 (2015); for the facts set forth below,

Petitioner Tellier's Second Section 2255 Motion should be granted:

A.  Indictment, Conviction, & Sentence:

In October of 1992, a federal grand jury, seated in the Southern District of New York, returned an indictment

charging Petitioner Rene Tellier, including over a dozen co-defendants, with violations of various federal laws.

More specifically, Petitioner Rene Tellier was charged as follows:

Count 1:  RICO conspiracy offense (18 U.S.C. Section 1962);

Count 2:  RICO substantive offense (18 U.S.C. Section 1962);

Count 3:  Conspiracy to commit Hobbs Act robbery (18 U.S.C. Section 1951);

Count 4:  Carrying a firearm in relation to a crime of violence (18 U.S.C.. Section 924(c));

Count 5:  Conspiracy to commit Hobbs Act robbery (18 U.S.C. Section 1951); &

Count 6:  Carrying a firearm in relation to a crime of violence (18 U.S.C. Section 924(c)).

In December of 1993, Rene Tellier, including four co-defendants, proceeded to trial on the Rico, Hobbs Act, and

firearm offenses.  On March 4, 1994, after a lengthy trial, the jury found Rene Tellier guilty of the aforementioned

offenses.  In December of 1994, the late Honorable Judge Miriam Goldman Cedarbaum sentenced Rene Tellier to a

life term of imprisonment including a consecutive term of 25 years for the two fire arm convictions.

B.  Johnson v. United States:

on June 26, 2015, in Johnson v. United States, 135 S.Ct. 2551, the United States Supreme Court ruled that 18

U.S.C. Section 924(e) was unconstitutionally vague.  In sum, the Supreme Court held that imposing increased sen-

tence under the residual clause of 18 U.S.C. Section 924(e)(2)(B), Armed Career Criminal Act of 1984, held to violate

TRULINCS  32515054 - TELLIER, RENE - Unit: ALP-C-A

--------------------------------------------------------------------------------

FROM: 32515054
TO:
SUBJECT: addendum --2 rt
DATE: 11/24/2019 07:39:07 PM

. Fifth Amendment's guarantee of due process because the residual clause denied fair notice to defendant and in-

vited arbitrary enforcement by judges.

C.  The 28 U.S.C. Section 2244 Application

As district courts and circuit courts split over the applicability of Johnson being also applied to 18 U.S.C. Section

924(c), on June 16, 2016, Petitioner Rene Tellier filed with the Second Circuit an application pursuant to 28 U.S.C.

Section 2244 in which he sought permission to file a second Section 2255 Motion in the district court of conviction

to challenge his two firearm conviction (18 U.S.C. Section 924(c)) because the residual clause, like Section 924(e),

was unconstitutionally vague and because conspiracy to commit Hobbs Act robbery did not qualify as a crime of

violence.  Thus, his firearm conviction should be vacated because their predicate offenses; that is, conspiracy to

commit Hobbs Act robberies do not qualify as crimes of violence.

D.  The Second Circuit's Order:

The Second Circuit was extremely backlogged with Johnson applications pursuant to 28 U.S.C. Section 2244.

In the interim, two cases dealing with Section 924(c) and a conspiracy offense and a substantive offense to com-

mit Hobbs Act robbery were pending in the Second Circuit to evaluate the applicability of the rule of Johnson to

the statute's vagueness challenges by Appellant Hill and Appellant Barrett.

The Second Circuit issued a boilerplate order directing Section 2244 Applicants, including Petitioner Tellier, to

file a motion within 30 days of disposition being rendered in either Hill or Barrett showing either case's applicability

to applicant's claim and whether applicant is entitled to immediate release or imminent release.

1.  United States v. Hill:

On August 3, 2016, in United States v. Hill, 832 F.3d 135 (2d Cir. 2016), the Second Circuit held that Hobbs Act

robbery is categorically a crime of violence under the force clause, 18 U.S.C. Section 924(c)(3)(A).  On May 9, 2018,

the Second Circuit reaffirmed Hill's conviction holding that substantive Hobbs Act robbery is a crime of violence under

the elements clause of Section 924(c)(3)(A). See United States v. Hill, 890 F.3d 51 (2d Cir 2018).  Hill's Petition for

a Writ of Certiorari was subsequently denied, see 139 S.Ct 844 (2019).

ADDENDUM -- 2

TRULINCS 32515054 - TELLIER, RENE - Unit: ALP-C-A

--------------------------------------------------------------------------------

FROM: 32515054
TO:
SUBJECT: Addendum -- 3  rt
DATE: 11/24/2019 07:39:21 PM

Since the Hill opinion did not apply to Petitioner Tellier's Section-2244 claim, Petitioner filed no motion with the

circuit court discussing the disposition of Hill, but Petitioner Tellier waited for the resolution of the Barrett case which

factually and legally applied to his Section 924(c) convictions and conspiracy to commit Hobbs Act robberies.

2.  United States v. Barrett:

On September 10, 2018, in United States v. Barrett, 903 F.3d 166 (2018), the Second Circuit ruled that a Hobbs

Act robbery conspiracy was a crime of violence under the elements definition of 18 U.S.C. Section 924(c)(3)(B) because

conspiracy to commit categorical crime of violence was itself categorical crime of violence, and conduct-specific

approach to Section 924(c)(3)(B) was appropriate.

3.  United States v. Davis:

While Barrett's petition for a Writ of Certiorari was pending, on June 24, 2019, in United States v. Davis, 139

S.Ct. 2319, the Supreme Court held that the residual clause of Section 924(c)(3)(B) is unconstitutionally void for

vagueness; in addition, the Supreme Court held that Hobbs Act robbery conspiracy did not categorically qualify as a

crime of violence.

Four days later, on June 28, 2019, the Supreme Court in Barrett, 139 S.Ct. 2774, granted, vacated, and remanded

Barrett to the Second Circuit with instructions to further consider his claim in light of United States v. Davis, 139 S.Ct.

2319 (June 24, 2019).  On remand, the Second Circuit ruled that Davis precluded the appellate court from concluding

that Barrett's Hobbs Act robbery conspiracy crime qualified as a Section 924(c) crime of violence.  See United States

v. Barrett, 937 F.3d 126, 127 (2nd Cir. June 28, 2019).

E.  The Second Circuit's Grant's Tellier's Section-2244 Application:

Petitioner Tellier filed a motion with the Second Circuit to lift the abeyance order and to grant his application

for authorization to file a Second Section 2255 Motion in the district court to challenge his conviction based on

Johnson and now Davis and Barrett.  ( See Second Circuit Docket Entry #41, September 19, 2019).

On November 5, 2019, the Second Circuit issued an Order granting Petitioner Tellier's Section 2244 Application,

stating: "Petitioner moves for leave to file a successive 28 U.S.C. Section 2255 motion, primarily based on Johnson

v. United States,  135 S.Ct. 2551 (2015), arguing that his 18 U.S.C. Section 924(c) convictions are no longer valid.

This Court liberally construes Petitioner's motion as also invoking United States v. Davis, 139 S.Ct 2319 (2019).

TRULINCS 32515054 - TELLIER, RENE - Unit: ALP-C-A

--------------------------------------------------------------------------------

FROM: 32515054
TO:
SUBJECT: Addendum -- 4 RT
DATE: 11/24/2019 03:21:57 PM

.   Upon due consideration, it is hereby ORDERED that the stay previously entered by this Court is TERMINATED, Petition-

er's motion for leave to file a successive Section 2255 motion is GRANTED, and this proceeding is TRANSFERRED to

the district court.  See 28 U.S.C. Section 1631.  Petitioner has made a prima facie showing that the proposed Section

2255 motion satisfies the requirements of Section 2255(h).  Bell v. United States, 296 F.3d 127, 128 (2d Cir. 2002)

(per curiam)." (See Second Circuit Order, dated November 5, 2019, Exhibit 1).

    F.  Approved Section 2255 Claim:

    On March 4, 1994, Rene Tellier was convicted by the jury on RICO offenses (Counts 1 and 2), Hobbs Act robbery

conspiracy offenses (Counts 3 and 5) and firearm offenses (Counts 4 and 6).  In December of 1994 the district court

sentenced Petitioner Tellier to a life term of imprisonment plus a consecutive twenty-five year term of incarceration.

    In Count 3, the indictment specifically charged that in and around August 1988 Rene Tellier and others conspired

to commit robbery as the term is defined in 18 U.S.C. Section 1951, to wit, to commit robbery at Antonovich Fur

Store located at 1345 Avenue of Americas, New York, New York.  In addition, in Count 4, the indictment specifically

charged that on or about August 31, 1988, Rene Tellier, during and in relation to a crime of violence...for the offense

charged in Count 3, did use and carry a firearm. (18 U.S.C. Section 924(c)(1)).

    At the trial, the government's evidence established that the Antonovich Fur Store was burglarized after midnight in

late August of 1988.  No robbery ever occurred and according to the trial evidence Rene Tellier and others broke into

the establishment and made off with a substantial amount of fur jackets estimated at approximately $500,000.00. in

value.

    In Count 5, the indictment specifically charged that in and around October 1989, Petitioner Rene Tellier and others

conspired to commit robbery as the term if defined in 18 U.S.C. Section 1951, to wit, to commit robbery of Jindo Furs

located at 1010 Third Avenue, New York, New York.  In addition, in Count 6, the indictment further charged that on

October 26, 1989, Rene Tellier during and relation to a crime of violence...for the offense charged in Count 5, did

use and carry a firearm.  (18 U.S.C. Section 924(c)(1)).

    At the trial, the government's evidence established that the Jindo Fur store was burglarized after midnight in late

October of 1989.  No robbery ever occurred and according to trial evidence Rene Tellier and others broke into the

establishment and made off with a substantial amount of fur jackets estimated at approximately $250,000.00 in

06/01/2020

value.

According to United States v. Davis, 139 S.Ct 2319 (June 24, 2019), conspiracy to commit Hobbs Act robbery is not a crime of violence for Section 924(c) liability. The Supreme Court additionally ruled that Section 924(c)(3)(B), the residual clause, is void for vagueness. Finally, the Supreme Court held that conspiracy to commit Hobbs Act robbery cannot come within the ambit of Section 924(c)(3)(A) because conspiracy does not have as an element the use, attempted use, or threatened use of physical force against the person or the property of another.

G. Full-Resentencing Required:

Based on Petitioner Tellier's Davis claim, which requires the Court to vacate Counts 4 and 6, he asserts the Court must also vacate the remaining counts and hold a de novo and full-resentencing hearing for the reasons stated below:

1. Davis Opinion:

First, in United States v. Davis, 139 S.Ct 2319, 2336 (2019), the Supreme Court noted that the government conceded that a full-resentencing hearing is required if one Section 924(c) count is vacated. See also Dean v. United States, 137 S.Ct 1170, 1176 (2017)(same).

Petitioner Tellier finds himself in the same legal scenario as Davis and therefore the same governmental concession should apply in this case.

2. The Sentencing Package Doctrine:

Second, that is, another reason for a de novo and full- resentencing, at the December 29, 1994 sentencing proceeding, Petitioner Tellier appeared before Judge Cedarbaum, and the following colloquy occurred between Judge Cedarbaum and AUSA Gardephe:

> AUSA Gardephe: No, Your Honor. Obviously, we feel the appropriate sentence is life, life plus the mandatory 25 years consecutive for the gun counts. I don't think there is anyone that could read the presentence report and conclude that any other sentence was appropriate under the circumstances.

06/01/2020

> The Court:   And since I sat through the trial, I don't really need to rely on the presentence report.

(See Sentencing Transcript, pages 9-10, dated Dec. 29, 1994)(Exhibit 1).

The Court then directed its attention to Petitioner Tellier, and, in relevant part, imposed the following terms of imprisonment.

> The Court: So although it is very sad, indeed tragic, that a man so young should look forward to a life of prison, it is also just in this case. I do sentence you to life in prison, followed by five years on Count Four and 20 years on Count 6.
>
> AUSA Gardephe:  Your Honor, on the counts that have a twenty-year maximum, I take it Your Honor's intent is to impose a sentence at the statutory maximum?
>
> The Court:   That's correct.  I should spell that out.  On Counts 3, 5, and 7, it is a concurrent sentence of 20 years.  On Count 4 there is a five-year consecutive sentence and on Count 6 a twenty-year consecutive sentence after that.

(Sentencing transcript @ pgs 11-12).   From the imposition of the sentence, it is apparent that Judge Cedarbaum employed the sentence package doctrine by grouping the counts together and then running them concurrently together with the exception of the firearm counts which by law are to be imposed consecutively to the Hobbs Act conspiracy Counts including the Rico conspiracy and substantive Counts.

In United States v. Triestman, 178 F.3d 624, 630 (2d Cir. 1991) the Second Circuit held: "We therefore hold that the district court had authority under Section 2243 to dispose of the matter as law and justice require, and that this authority included the power to resentence Triestman to the overall term that he would have receive on his interdependent sentencing package absent his unlawful Section 924(c) conviction.  See also Id., @ pgs 631-32 (collecting cases); see also United States v. Gordils, 117 F.3d 99 (2d Cir. 1997)(same).

6

06/01/2020

In United Sates v. Berry 2020 U.S. Dist. Lexis 20380 {2020 U.S. Dist. Lexis 5} (WD Va), the district court held "Since vacating Berry's ten year consecutive Section 924(c) sentence radically changes the sentencing package, the United States argued that the entirety of Berry's sentence should be vacated and a resentencing hearing held with the court to resentence Berry on the remaining counts of conviction." The Court further expounded, "As the parties acknowledge, the Fourth Circuit has provided guidance to district courts about resentencing after one count of conviction has been vacated -- the prior sentence becomes void in its entirety, and the district court is free to revisit any rulings it made in the initial sentencing."  citing United States v. Ventura, 864 F.3d 301, 309 (4th Cir, 2017).

Petitioner Tellier argues that when a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentence package in which the sentences on individual counts are interdependent imprisonment.

Petitioner Tellier argues that when a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentence package in which the sentences on individual counts are interdependent. To support this argument, Petitioner Tellier cites Dean v. United Sates, 137 S.Ct. 1170, 1175-76 (2017) where the Supreme Court noted that the sentencing statutes, 18 U.S.C. Sections 3553, 3582, 3584, direct courts to consider the terms of imprisonment on each count of a multicount conviction when determining the length of the sentence on other counts.  In Dean, the Court rejected the government's argument that district courts should calculate the appropriate term of imprisonment for each individual offense, disregarding whatever sentences a defendant may face on other counts.  See Powell v. United States v. Powers, 842 F.3d 177, 180 (2d Cir. 2016); United States v. Quintieri, 306 F.3d 1217 (2d Cir 2002)(habeas corpus Proceeding); United States

06/01/2020

v. Rigas, 583 F.3d 108, 115-16 (2d Cir 2009); Predreth v. United Sates, 1996 U.S. Dist. Lexis 6315

(N.D.N.Y. 1996); Reyes v. United States, 1996 U.S. Dist Lexis 15890 (S.D.N.Y. 1996); & Gordils v. United

States, U.S. Dist Lexis 15277 (S.D.N.Y. 1996)(de novo resentencing required if one count is vacated).

3.   Judgment in a Criminal Case:

Third, and another reason for a de novo and full resentencing hearing, the Judgment in this

criminal case has several significant errors recorded on it which cannot just merely be corrected as

shown below:

For the first error, the Judgment provides that Petitioner Tellier is adjudged guilty of Count Five

which involved the offense of transported interstate commerce in violation of 18 U.S.C. Section 2314

and Section 2.  For the record, Petitioner Tellier was not charged with this offense in the indictment, nor

did the jury find him guilty of it. In fact, Count Five in the indictment charged Petitioner Tellier with

conspiracy to commit Hobbs Act robbery. So, the twenty-year term of imprisonment imposed on this

count, listed in the Judgment, must be vacated and Petitioner must be resentenced de novo, since the

uncharged criminal offense was part of the sentencing package formulated by Judge Cedarbaum to

impose the overall sentence.  (See Judgment marked as Exhibit 2).

For another error, which warrants a full resentencing, the Judgment provides that Petitioner Tellier

is adjudged guilty of Counts One and Two which involved racketeering activity in violation of 18 U.S.C.

Section 1962(d) & (c). The Judgment indicates the dates of these offenses concluded for Count One in

the 1970s and for Count Two in 1070s.  Apparently, the year 1070 is a typographical error and should be

changed to the 1970s.

For the third error, which warrants a full resentencing, the Judgment and offenses do not

correspond with the Counts of the indictment.  Below is Counts 5, 7, and 6 as they appear in the

Judgment and the indictment.

06/01/2020

JUDGMENT

| | | |
|---|---|---|
| 18 U.S.C. 2314 | Transported Interstate Commerce | Count 5 [1] |
| 18 U.S.C. 924(c) | Crime of Violence | Count 7 |
| 18 U.S.C. 1951 | Conspiracy to Commit Robbery | Count 6 |

INDICTMENT

| | | |
|---|---|---|
| 18 U.S.C. 1951 | Conspiracy to Commit Robbery | Count 5 |
| 18 U.S.C. 1958 | Murder for Hire | Count 7 |
| 18 U.S.C. 924(c) | Crime of Violence | Count 6 |

As easily noticed, when the Judgment and indictment are compared, they are sharply distinguished from one another. This type of error goes way beyond a clerical error since a sentence of imprisonment was imposed on an offense for which Petitioner Tellier was neither indicted nor found guilty of committing.

There is a remedy for this legal dilemma found in United States v. Pressley, 2017 U.S. Dist. Lexis 137028, {2017 U.S. Dist Lexis 6-7} (E.D.N.Y.) in which the Court held, "Importantly, the rule[2] covers only minor, uncontroversial errors, and is not intended to allow reassessment of the merits of an earlier decision after the time for reconsideration or appeal ha[s] elapsed. United States v. Weber, 51 F.3d 342, 347 (2d Cir. 1995)(quoting United States v. Jones, 608 F.2d 386, 389 (9th Cir. 1979). Since his time to appeal his sentence has long passed, the proper vehicle for Defendant to claim error in his original sentencing proceeding is a 28 U.S.C. Section 2255 Petition. See Id. @ 349, n. 17.

---

[1] Tellier was not charged with a violation of 18 U.S.C Section 2314 which is referenced in the judgment. And the twenty-year sentence imposed on Count 5 must be vacated and the remaining counts must be vacated so the Court can hold a de novo and full-resentencing.

[2] "The rule" is a reference to Federal Rule of Criminal Procedure, Rule 36.

06/01/2020

Therefore, in this Section 2255 Proceeding, Petitioner Tellier can raise the claim for the Court to

consider and correct the judgment enter by Judge Cedarbaum on December 29, 1994.  Since the Court

must hold a de novo and a full resentencing hearing, the Court can at that time correct the illegal

sentence and also issue a correct judgment.

4.  Excessive Sentence of Life Imprisonment:

For the fourth error, which can be addressed at a full resentencing hearing, the Court excessively

sentenced Petitioner Tellier to life imprisonment under 18 U.S.C. Sections 1963(a) for Counts 1 and 2,

i.e., conspiracy and substantive Rico Counts, without articulating whether the Court used the statutory

penalties or the United States Sentencing Guidelines or both for the overall sentence.

(a)  The Statutory Penalties:

If the district court consulted the statutory penalties for all of the predicate acts charged in Counts

One and Two, then she may have taken the most severe offenses, that is, the four predicate acts of

murder and referenced the federal murder statute, 18 U.S.C. Section 1111, and cross referenced it with

Section 1963(a), the RICO criminal penalties provision, to import a life term of imprisonment.

However, Judge Cedarbaum may have utilized the amended version of Section 1963 which

increased the penalty from 0 to 20 years, to now include life if the predicate acts required a life

sentence.  This possible utilization by the Court would have been incorrect because of the life line of

four predicate acts pre-dated the amendment to Section 1963(a)'s penalty.

To be more concise, between the dates of May 12, 1987 and December 5, 1987, the time period

when the four predicate acts occurred, the criminal penalty statute, 18 U.S.C. Section 1963, in relevant

part, read as follows:

Section 1963      Criminal Penalties
"(a)  Whoever violates any provision of Section 1962 of this
Chapter shall be fined under this Title or imprisoned not
[m]ore than 20 year[s]"

10

06/01/2020

(emphasis added).  See October 12, 1984, Pub L. 98-473, Title II, Ch III, Part A, Section 302, Ch XXIII, Sec 2301 (a)-(c), 98 Stat 2040, 2192.

Indeed, the 1884 version of the penalty statute should have governed Judge Cedarbaum's sentencing authority setting the mandatory and maximum penalty range available, since this statutory penalty was the only one in existence at the time of the occurrence of the relevant predicate acts. Notwithstanding this, Judge Cedarbaum gave Petitioner Tellier a life sentence.

One feasible explanation is that on December 29, 1994, the Court possibly used the amended version of 18 U.S.C. Section 1963(a) to import a life sentence.  Then as now, the penalty statute, in relevant part, provided:

> Section 1963      Criminal Penalties
> "(a)  Whoever violates any provision of Section 1962 of this
> Title shall be fined under this Title or imprisoned not more
> than 20 years (or life if the violation is based on racketeering
> activity for which the maximum penalty includes life imprison-
> ment) or both..."

The above-noted parenthetical portion of the statute's provision of life imprisonment was added to subsection (a) on November 18, 1988; see Pub L 100-690, Title VII, Subtitle B, Sections 7034-7058, 102 Stat 4398, 4403.

In Brown v. United States. 2019 U.S. Dist Lexis 118182 {2019 U.S. Dist. Lexis 6} (S.D.N.Y.) the district court advised the defendant at the sentencing proceeding that the court does not have the authority to exceed any possible statutory maximum or order a sentence less than any statutory minimum.

Exceeding the statutory maximum in Petitioner Tellier's case, as the Court obviously did, grossly violated the ex post facto clause of the Constitution.  Section 1963(a) carried no more than a twenty-year maximum sentence for the racketeering acts of murder in 1987.  Thus, the only logical explanation for the implementation of life would be that the court used the latter version of the penalty statute. See Collins v. Youngblood, 479 U.S. 37, 41 (1990) (ex post facto clause prohibits laws that retroactively alter

11

06/01/2020

the definition of crimes or increase the punishment). See also Leohauser v. Palakovich, 2010 U.S. Dist,

Lexis 123035 (E.D. Pa)(Section 2254 Proceeding)(the court held the statute permitted to enhance the

sentence, and because petitioner was not sentenced under the amended sub-section, there was no ex

post facto violation. An ex post facto claimant must show that he was sentenced under a new or an

amended law that imposed additional punishment to that prescribed at the time of the commission of

the offense). See also In re Sealed Case, 702 F.3d 59, 64 (D.C. Court of Appeals, 2012)(a miscarriage of

justice occurs if the sentence is unlawful because it exceeds the statutory maximum).

If Judge Cedarbaum's entry of judgment in the form of life imprisonment was based on the

amended version of Section 1963(a), than the portion of the amendment to subsection (a) would have

clearly abridged the ex post facto clause of the Constitution. Since Judge Cedarbaum gave no reasons for

the life sentence, Petitioner Tellier can only assume the court's reasoning behind the judgment in that

respect.

In United States v. Minicone, 960 F.2d 1099 (2d Cir. 1992) the appellant Inserra argued that the

guideline range violated the ex post facto, arguing:

> Inserra contends that that Court improperly used the first degree murder
> guideline to establish his base offense level. Although New York law would
> have categorized the murder of Marrone only as second degree murder, the
> task of the district court was to find the offense level corresponding to the
> most analogous federal offense. Section 2E1.1. According to the New York
> Penal Law Section 125.25, a person is guilty of murder in the second degree
> when, with intent to cause the death of another, he causes the death of
> such person or third person. 18 U.S.C. Section 1111 (1989) defines first
> degree murder as "willful, deliberate, malicious, and premeditated killing."

> Inserra also contends that application of the Guidelines to him violates the
> Ex Post Facto Clause of the Constitution. U.S. Const. art. I, Section 9. Prior
> to November 1, 1987, a person convicted of RICO conspiracy faced an
> indeterminate sentence of not more than 20 years. 18 U.S.C. Section 1963
> (superseded). Under the Guidelines, the sentence is based on the highest
> offense level applicable to the underlying racketeering activity, if that
> offense level exceeds 19. Guidelines Section 2E1.1. The highest offense

06/01/2020

level here was 43 based on the 1976 murder, and calls for the 20 year
sentence the district court imposed.

We have found that in general no Ex Post Facto violation occurs by the
application of the Guidelines to straddle crimes, that is, crimes beginning
before the date of the Guidelines, but continuing thereafter.  United States
v. McCall, 915 F.2d 811, 816 (2d Cir. 1990); United States v. McCall, 891 F.2d
988, 991-92 (2d Cir. 1989). In this case, Inserra was sentenced for a RICO
conspiracy active between 1973 and 1989.  While Inserra himself
committed no predicate acts after that date of the Guidelines, he did not
withdraw from the conspiracy and therefore remains fully liable for the acts
of co-conspirators.  United States v. Bafia, 949 F.2d 1465, 1477 (7th Cir.
1991).

We recognize, as unique to Inserra's case, that no act of any conspirator
committed during the Guidelines period, even if charged to Inserra, could
result in the 20 year sentence imposed, and that the length of Inserra's
sentence is determined solely on the basis of pre-Guideline conduct.

Minicone, 960 F.2d @ 1110-1111.  It is important to note that the time frame for Minicone spanned

from 1973 to 1989 which post-dated the amendment to Section 1963(a) which increased the statutory

penalty to include a term of life imprisonment if the underlying predicate act required such a sentence.

It is also equally important to note that Minicone did not withdraw himself from the conspiracy and

therefore became subject to the Guidelines.  However, Minicone could not be penalized with the

increased penalty of Amended Section 1963, that is, the life term of incarceration, but was sentenced to

twenty year maximum which is only what the old version of Section 1963(a) authorized. The Guideline

range referenced in Minicone's case would have called for life but the Guideline could not override the

statutory provision of zero to twenty years which was the penalty when the crime was accomplished by

appellant.

In Petitioner Tellier's case the result should have been no different than Minicone's, but Judge

Cedarbaum used possibly the amended version of the Statutory penalty which prescribed life

imprisonment; and then she may have in conjunction with this statutory provision referenced the

Guidelines which provided a base offense level of 43 for the predicate acts of murder requiring a life

13

sentence as well.  Once again, Judge Cedarbaum did not announce the reasons for her determination of life but may have used both the aforementioned statute and Guideline as factors for her decision.

(b)  The United States Sentencing Guidelines:

On December 29, 1994, at the sentencing proceeding, Judge Cedarbaum made the following comment to AUSA Gardephe:  "Right.  And since I sat through the trial, I don't really need to rely on the presentence report."  (See Sent. Trans. @ pg 10:6-8).

However, the Judgment, signed by Judge Cedarbaum, indicated "The Court adopts the findings and guidelines application in the Presentence Report."  And the Judgment further indicated that the Guideline Range Determined by the Court, in relevant part, is as follows:

Total Offense Level  -----  51

Criminal History Category  -------  VI

Imprisonment Range  ------------  Life plus 25 Years

Supervised Release  --------------  N/A

(See Judgment @ page 3).[3]

If the Guidelines were Judge Cedarbaum first focal point, she may have looked at Section 2E1.1 which deals with unlawful conduct relating to racketeering influenced and corrupt organizations. Section 2E1.1 begins the base offense level at 19, and an increase is based on higher Guideline provisions.  For instance, and another probability for Judge Cedarbaum's calculation, she may have referenced 2A.1.1 for First Degree Murder which provides a Base Offense Level of 43 with a cross

---

[3] Because the Bureau of Prisons only permits a prisoner to have the first two pages of the Judgment, Petitioner Tellier was only permitted to look at page three which indicated the statement of reasons for the Judgment which is set forth above.  However, Petitioner Tellier cannot furnish the court or government with a courtesy copy of this portion of the document since he cannot retain a copy himself.  The government or Court can easily obtain a copy of this record if the need arises.

06/01/2020

reference to 18 U.S.C. Section 1111. Section 2E1.1. also notes that the statutory Because the Bureau of Prisons only permits a prisoner to have the first two pages of the Judgment, Petitioner Tellier was only permitted to look at page three which indicated the statement of reasons for the Judgment which is set forth above. However, Petitioner Tellier cannot furnish the court or government with a courtesy copy of this portion of the document since he cannot retain a copy himself. The government or Court can easily obtain a copy of this record if the need arises. Provisions are as follows: 18 U.S.C. Section 1962, 1963. With a Base Offense Level of 43, the Criminal History Category from I to VI each call for a mandatory sentencing range of life imprisonment.

There are major Ex-Post-Facto-Clause conflicts with the use of the 1993 Sentencing Guidelines manual used by the Probation Department and adopted by the Court according to the Judgment. A full sentencing of Petitioner Tellier is required so this Court can correct the misapplication of the Guidelines in the Presentence Report which recommended a life sentence. The use of the 1993 manual raised Ex Post Facto Clause violations since Petitioner was found guilty of four predicate acts of murder that occurred between May and December of 1987, set forth in Counts One and Two.

The Section of the Guidelines that provides for the use of the manual in effect on the day of sentencing, Section 1B1.11, was effective on January 11, 1992 through Amendment 442, effective November 1, 1992, after the murders took place. The Guidelines which expanded the sentencing date application to multiple counts as well as the "one book rule" in 1B1.11 was not created until January 1, 1993 through amendment 474, effective November 1, 1993, again long after the murders were committed.

Significantly, the Guidelines in effect on the date of the murders did not have an enhancement for when the offense resulted in murder or a cross reference to first degree murder. See USSG Section 2A1.1 (1989), as set forth in Amendment 311. the enhancement and cross reference were created by Amendment 311, effective November 1, 1990, a year later.

06/01/2020

Furthermore, the criminal penalties of RICO, 18 U.S.C. Section 1963(a) in effect at the time period of the homicides in this case provided that "[w]hoever violates any provision of Section 1962 of this Chapter shall be fined not more than $25,000 or imprisoned not more than twenty years or both..." See Section 1963, amended October 12, 1984. As already mentioned above, the RICO penalty statute was not amended until November 18, 1988, in which the statute's provision of life imprisonment was added to subsection (a). See 102 Stat. 4398, 4403.

(c) The Saving Clause:

Pursuant to Title 1 U.S.C. Section 109, it specifically provides that when a criminal statute is amended, the penalty in place at the time of the commission of the offense applies to any convicted defendant unless the amendment expressly provided otherwise. The Saving Statute applies to the "penalty" as well as the "liability incurred under such statute," 1 U.S.C. Section 109: the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of the offense." Warden Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 661 (1974)(citing Jones v. United States, 327 F.2d 867 (D.C. Cir. 1963)); United Sates v. Kirby, 176 F.2d 101 (2d Cir. 1949). As then, Circuit Judge Sotomayor plainly stated: "We held in Ross that sentencing is an integral part of the 'prosecution' of the accused, as the term is used in Section 109, and therefore that Section 109 saves sentencing provisions in addition to substantive laws." United States v. Smith, 354 F.3d 171, 175 (2d Cir. 2003)(citing United States v. Ross, 464 F.2d 376, 379-80 (2d Cir. 1972).

Therefore, the penalty in effect at the time of the commission of the four racketeering acts of murder only carried a penalty of twenty years. To employ the penalty in effect a year after the crimes were committed which increased the punishment to life imprisonment violated the Ex Post Facto Clause of the United States Constitution and the general saving clause of 1 U.S.C. Section 109. In Peugh v. United States, 133 S.Ct. 2072, 2088 (2013), the Supreme Court found an ex post facto violation where a

16

06/01/2020

defendant had been sentenced under a more draconian Guideline first promulgated after he committed the crime.

(d)  Second Degree Murder

At a full resentencing hearing, the Court can address the fact the indictment charged second degree murder under New York Penal Code 125.25 and the presentence report cited Second degree murder.  In the specific language of the indictment, the government described Petitioner Tellier's conduct as violating Section 125.25 of the Penal Law of the State of New York.  Under N.Y. State Penal Law, Section 125.25 is denominated as Murder in the Second Degree, not murder in the First Degree. Even in the PSR it is described as Second-Degree murder.  Noteworthy is the fact that the jury was charged with second-degree murder, not first degree murder. In addition, no juror has found, beyond a reasonable doubt, the element of "malice afterthought" as required for Murder in the First Degree under 18 U.S.C. Section 1111(a).

Following the Supreme Court's decision in Booker, "a sentencing judge violates the Sixth Amendment by finding facts and mandatorily using them to enhance a sentence above the guideline ranges that would have been applicable based solely on facts before the jury."  United States v. Williams, 399 F.3d 450, 452 (2d Cir. 2005)(emphasis in original).

In Sum, the District Court (1) used the amended version of Section 1963(a) to import a life term of imprisonment, (2) improperly utilized the USSG cross reference provision for the murders, (3) and wrongly used the first degree murder State penal code to sentence Petitioner Tellier to life imprisonment.  Paragraphs (1) and (2) violated the ex post facto clause of the Constitution; whereas, paragraph (3) violated Petitioner Tellier's constitutional rights to be tried on an indictment returned by a grand jury and to be found guilty beyond a reasonable doubt by a jury of his peers.  As set forth above, the indictment did not charge Petitioner Tellier with first degree murder nor was the jury instructed on first degree murder.

06/01/2020

(d)   The Statutory Penalty of Section 1963(a) is Unconstitutionally Vague:

In addition, and warranting a full-resentencing, the RICO penalty statute, as amended on

November 18, 1988, was unconstitutionally vague as it did not explicitly express that it could be applied

retroactively to a pre-enactment offense.

In United States v. Davis, 139 S.Ct. 2319 (2019), Justice Gorsuch delivered the opinion of the Court

and at the outset declared " in our constitutional order, a vague law is no law at all." The Second Circuit

echoed those words in United States v. Barrett, 2019 U.S. App. Lexis 26461 (2d Cir.)(quoting Davis

holding "that Section 924(c)(B)(3) is unconstitutionally vague," and its pronouncement that "a vague law

is not law at all.").

Furthermore, the Saving Clause Statute, 1 U.S.C. Section 109, provides that the repeal of any

statute shall not have the effect to release or extinguish any penalty...incurred under such statute,

unless the repealing Act shall expressly provide...." See United States v. Smith,  354 F.3d 171, 173 (2d Cir.

2003)(Sotomayor, C.J.).

If this Court holds that Section 1963(a), as amended in November of 1988, applies to Petitioner

Tellier's case and makes him liable for a life sentence again, then Petitioner Tellier argues that the

amended version of Section 1963(a) is unconstitutionally vague under the saving statute provision.

Simply put, Petitioner Tellier was not put on notice by the amended Statute that he could be held liable

for pre-enactment offense. For example, for clarity and notice, the amended statute could have read as

follows: "or life if the violation is based on racketeering activity, within a pattern of racketeering activity,

for which maximum penalty includes life imprisonment".

H.   Post Judgment Rehabilitation:

Finally, and requiring a full and de novo resentencing, Petitioner is entitled for the Court to

consider his post judgment rehabilitation before imposing its sentence upon him.  See Pepper v. United

States, 562 U.S. 476 (2011).

06/01/2020

According to Pepper, Petitioner Tellier can appraise the Court of his post-judgment rehabilitation so the Court can properly assess whether to be lenient with the imposition of its resentencing of him. With three decades of incarceration, Petitioner should be permitted to present evidence of post-judgment rehabilitation.

And the Court should order the probation department to prepare an up-dated Presentence Report to aid the Court in its decisional process in determining an appropriate sentence to include the sentencing factors this Court must find under 18 U.S.C. Section 3553(a).

Petitioner Tellier requests a full Booker resentencing be conducted by the Court since the guidelines were mandatory when Petitioner Tellier was sentenced on December 29, 1994. The Supreme Court in Booker ruled that the mandatory guidelines violated the constitution and should only be applied as advisory in nature hence forth. As set forth above, Judge Cedarbuam adopted the PSR and therefore could have used the mandatory recommendations that violate the rule of law announced in Booker. See United States v. Booker 543 U.S. 220 (2005); See also United States v. Pruitt, 813 F.3d 90 (2d Cir. 2015)(the Supreme Court held that the mandatory guideline system was incompatible with the 6th Amendment right to trial by jury and it accordingly severed the provision of the Act that made the guidelines mandatory).

I.  Straddle Offenses

A matter for adjudication at the de novo and full resentencing proceeding is the straddle offense doctrine possibly applied by the sentencing court to increase the punishment imposed on Petitioner Tellier from 20 years to life on both Counts 1 and 2. However, the straddle-offense doctrine is inapplicable to 18 U.S.C. Section 1963(a) for the reasons set forth below.

The indictment charged that Petitioner Tellier committed four predicate acts of murder between May and December of 1987. And during that time period Section 1963(a) only provide for a 20 year

19

06/01/2020

maximum term of imprisonment.  On November 18, 1988, nevertheless, Congress amended Section 1963(a) to also include life imprisonment.

On March 3, 1994, the jury returned a guilty verdict on Counts 1 and 2 which included the four predicate acts of murder.  And on December 29, 1994, Judge Cedarbaum, among other things, sentenced Petitioner to two life terms of incarceration on Counts 1 and 2.  Petitioner Tellier can only assume that Judge Cedarbaum incorrectly used the new version of Section 1963(a) and or used the straddle-offense doctrine to booth-strap the 1987 homicides to the first predicate act that occurred after the effective date of the new version of Section 1963(a) on November 18, 1988. In any event, neither the amended criminal penalties of 1963(a) nor the straddle-offense can be utilized to penalize Petitioner Tellier. To make this point, a look at the definitions of statutory language must be quickly reviewed.

1.  Racketeering Activity & Pattern of Racketeering Activity:

Racketeering activity is defined by Section 1961 (1) through (4).  For example, Section 1961 (1), provides definitions, in relevant part, as used in this chapter--

(1) "'racketeering activity' means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical..."

The rest of this definitive list in subsections (B) through (F) provide statutory provisions for each enumerated act.  It is important to note that "Racketeering Activity" is a single act and not multiple acts, since if one act is charged with another act, the two acts then constitute a "pattern of racketeering activity." See Cullen v. Margiotta, 811 F.2d 689, 718 (2d Cir. 1086)(S. Rep No. 617, 91st Cong. 1st Sess. 158 (1969)(racketeering activity is an act subject to criminal sanction)  See 18 U.S.C. Section 1961(1)).

A "'Pattern of Racketeering Activity' is defined by Section 1961 (5) which, in full, provides as follows:

06/01/2020

(5)  "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity"·

In sharp contrast to racketeering activity, a pattern of racketeering activity is two or more acts committed within the time period permissible by the statute.  See Crawford v. Franklin Credit Mgmt, 758 F.3d 473 (2d Cir. 2014)("A pattern of racketeering activity consists of, inter alia, at least two acts of racketeering activity." 18 U.S.C. 1961(5)).

With these definitions in mind, we turn to thee Section-1963 criminal penalty statute.  A simple reading of the statute's phraseology and noun's singularity supports that the penalty for a life sentence can only be based on racketeering activity, meaning one act, not more than one.  Section 1963(a), in relevant part, provides:

Section 1963        Criminal Penalties

"(a) Whoever violates any provision of Section 1962 of this Chapter shall be fined under this title or imprisoned not more than twenty years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)..."

If Congress meant for the November 18, 1988 amended version of Section 1963(a) to apply to a straddle offense, Congress would have absolutely used the phrase "pattern of racketeering activity" within the amended statute rather than racketeering activity.  In other words, every act committed before the effective date of the amended version of Section 1963 (a) cannot be booth-strapped to a future act committed after the effective date to create liability for a more severe punishment.  If Congress's intent was for a straddle offense to apply between the old version and new version of Section 1963(a), Congress would have used the appropriate language which is a pattern of racketeering activity to cause the codependent relationship for a straddle offense meaning a violator in that point of time would have been on constructive notice of the penalty.

06/01/2020

Moreover, Section 1963 (a)'s singular noun "violation" further supports that the racketeering activity pertains to a single act and not more than one. Therefore, Judge Cedarbaum could not use the straddle-offense doctrine to transform the racketeering activity into a pattern of racketeering activity so as to link together these two offenses beyond the effective date of the new version of Section 1963 so as to import a life sentence for Petitioner Tellier.

I. The Jury Should Have decided Whether Petitioner Came under The Amend Version of the Penalty Statute:

If we could ignore the aforementioned sentencing claims raised against Section 1963(a) as amended, then Petitioner Tellier states the amended statute required special jury authorization as a condition precedent to the imposition of a life sentence. See for example, Trenkler v. United States, 536 F.3d 85 (1st Circuit 2008). In addition, the jury should have decided which penalty statute Petitioner Tellier's conduct fell under for each predicate act of murder.

The District Court should not have selected the latter penalty version but the original in light of the jury's non-verdict on this matter. This is another sentencing error which should be addressed in the de novo and full resentencing hearing.

RELIEF REQUESTED: Wherefore, Petitioner Tellier's Section 924(c) convictions in Counts 4 and 6 must be vacated and the remaining counts should be vacated and he is entitled to a de novo and full resentenced on those counts since the void and vacated firearm counts effected the overall sentencing package and sentence. Petitioner Tellier submits that he is entitle to an Apprendi and Booker resentencing and that the probation department should be order to file an up-to-date presentence report. Petitioner Tellier also asserts that he does not waive his right to be present at the resentencing hearing (see Fed R. Crim Pro, Rule 43(3)).

06/01/2020

I, Rene Tellier, hereby declare under penalty of perjury that the foregoing is true and correct. Signed this ___2___ day of May, 2020.[4]

June

Respectfully submitted,

_Rene Tellier_

Rene Tellier, Pro-se
Reg # 32515-054
USP Allenwood, Box 3000
White Deer, Pa 17887

CERTIFICATE OF SERVICE

I, Rene Tellier, hereby declare under penalty of perjury that a copy of this amended Section 2255 Motion was on this ___2___ day of May, 2020, to the USA Attorney's Office which address is as follows:    One Saint Andrew's Plaza, New York, New York 10007.

June

Respectfully submitted,

_Rene Tellier_

Rene Tellier, Pro-se
Reg # 32515-054
USP Allenwood, Box 3000
White Deer, PA 17887

---

[4] 28 U.S.C. Section 2255(b) explicitly provides that the Court shall set aside the judgment...and shall resentence him..." Cross reference this provision with Federal Rule of Criminal Procedure, Rule 32(k) which governs sentencing and judgment.  At the de novo and full resentencing proceeding Petitioner Tellier should be entitled to all the rights enumerated in Rule 329(i)(1) through (4) and any other provisions this Court deems to be appropriate and just.

2515-054

AO 245 S (Rev. 4/90) Sheet 1 - Judgment in a C... ...al Case

# United States District Court

SOUTHERN ____ District of ____ NEW YORK

UNITED STATES OF AMERICA

V.

RENE TELLIER

(Name of Defendant)

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

Case Number:   SSSS92 CR 00869-02 MGC

GREGORY COOPER
Defendant's Attorney

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____ after a

☒ was found guilty on count(s) ONE, TWO, THREE, FIVE, SEVEN, FOUR and SIX      (INDICTMENT) _____

~~plea of not guilty~~ JURY TRIAL

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 1962(d) | Racketeering Activity | 1970s | ONE |
| 18:U.S.C. § 1962(c) | Racketeering Activity | 1970s | TWO |
| 18 U.S.C. § 1951 | Conspired to Commit Robbery | AUGUST 1988 | THREE |
| 18 U.S.C. § 2314 & 2 | Transported Interstate Commerce | OCTOBER 1989 | FIVE |
| 18 U.S.C. § 924(c)(1) | Crime of Violence | JANUARY 5,1990 | SEVEN |
| 18 U.S.C. § 924(c)(1) | Crime of Violence | AUGUST 31,1988 | FOUR |
| 18 U.S.C § 1951 | Conspired to Commit Robbery | OCTOBER 26,1989 | SIX |

SEE PSI PAGE 2

The defendant is sentenced as provided in pages 2 through __2__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984. **INDICTMENTS ORIGINAL 92 CR 869,
S 92 CR 869 and

☐ The defendant has been found not guilty on count(s) _____ SSS 92 CR 869 ARE DISMISSED.
and is discharged as to such count(s).

☒ Count(s) ____ALL OPEN COUNTS____ xxx(are) dismissed on the motion of the United States.

☒ It is ordered that the defendant shall pay a special assessment of $ 350.00 _____, for count(s)
ONE, TWO, THREE, FIVE, SEVEN, FOUR & SIX, which shall be due ☒ immediately   ☐ as follows:

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: DECEMBER 12, 1959

Defendant's Mailing Address:

MCC

Defendant's Residence Address:

(SAME AS ABOVE

DECEMBER 29, 1994
Date of Imposition of Sentence

Signature of Judicial Officer

MIRIAM GOLDMAN CEDARBAUM  U. S. D. J.
Name & Title of Judicial Officer

3 _____
Date

AO 245 S (Rev. 4/90) Sheet 2 - Imprisonment

Defendant:     RENE TELLIER                          Judgment—Page  2  of  3
Case Number: SSSS92 CR 00869-02-MGC

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of LIFE on Counts ONE and TWO to run CONCURRENTLY with each other
TWENTY (20) YEARS on Counts THREE, FIVE and SEVEN to run CONCURRENTLY with each other and CONCURRENT with imprisonment imposed on Counts ONE and TWO.
FIVE (5) YEARS on Count FOUR and TWENTY (20) YEARS on Count SIX each to run
CONSECUTIVELY to one another.

☐ The court makes the following recommendations to the Bureau of Prisons:

CONTINUED

☒ The defendant is remanded to the custody of the United States marshal.
☐ The defendant shall surrender to the United States marshal for this district.
              a.m.
    ☐ at _____ p.m. on _____.
    ☐ as notified by the United States marshal.
☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.
    ☐ before 2 p.m. on _____
    ☐ as notified by the United States marshal.
    ☐ as notified by the probation office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on __4/13/95__ to ___USP LEWISBURG_____ at
___LEWISBURG, PA._____, with a certified copy of this judgment.

                                J. D. Layer, Warden
                              United States Marshal

By _____
                                 Deputy Marshal

1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        SSSS 92 Cr. 869 (MGC)

 5   RENE TELLIER

 6                   Defendant.

 7   ------------------------------x

 8                                        December 29, 1994
                                          9:30 a.m.
 9
     Before:
10
                HON. MIRIAM GOLDMAN CEDARBAUM
11
                                         District Judge
12

13

14
                    APPEARANCES
15

16
     MARY JO WHITE
17       United States Attorney for the
         Southern District of New York
18   PAUL GARDEPHE
         Assistant United States Attorney
19

20   GREG COOPER
         Attorney  for Defendant
21

22

23

24

25
```

1          The second matter I ask the Court to consider is

2     as follows.  Your Honor was certainly aware there were a

3     number of subpoenas issued that led to the return of

4     material, material, as I understand, your Honor has received

5     in chambers and indicated, back in, I believe it was, May

6     that your Honor felt should not be made available to the

7     defendant.

8          THE COURT:  That I don't recall.  I do know I

9     have recently received applications for subpoenas and it

10    just seems to me that you can't issue trial subpoenas

11    endlessly after trial.

12         MR. COOPER:  Believe me, when I made the

13    statement back in May when the issues first evolved, based

14    upon the return of subpoenaed materials, that there were

15    documents the defendants believed they were entitled to,

16    Brady material they had not received, the government

17    indicated that they were going to, in my terms, sit on the

18    subpoenas because they felt they were inappropriate, that

19    they were trial subpoenas, should not be issued, and your

20    Honor indicated that you would not make that material

21    available to the defendants because you also believed the

22    subpoena process should not have been available.  Whether

23    your Honor recalls or not, it is my recollection, and I have

24    the correspondence.  Be that as it may, that is not the

25    basis of my application at this time.

1          The second matter I ask the Court to consider is

2     as follows.  Your Honor was certainly aware there were a

3     number of subpoenas issued that led to the return of

4     material, material, as I understand, your Honor has received

5     in chambers and indicated, back in, I believe it was, May

6     that your Honor felt should not be made available to the

7     defendant.

8          THE COURT:  That I don't recall.  I do know I

9     have recently received applications for subpoenas and it

10    just seems to me that you can't issue trial subpoenas

11    endlessly after trial.

12         MR. COOPER:  Believe me, when I made the

13    statement back in May when the issues first evolved, based

14    upon the return of subpoenaed materials, that there were

15    documents the defendants believed they were entitled to,

16    Brady material they had not received, the government

17    indicated that they were going to, in my terms, sit on the

18    subpoenas because they felt they were inappropriate, that

19    they were trial subpoenas, should not be issued, and your

20    Honor indicated that you would not make that material

21    available to the defendants because you also believed the

22    subpoena process should not have been available.  Whether

23    your Honor recalls or not, it is my recollection, and I have

24    the correspondence.  Be that as it may, that is not the

25    basis of my application at this time.

4

1          THE COURT:  I do think that it is inappropriate

2     after trial to issue trial subpoenas.  If there is some good

3     cause shown for a belief that there is particular

4     information in the nature of newly discovered evidence, that

5     is, of course, always appropriate.  I was not made aware of

6     any such information, that is, newly discovered evidence.

7          MR. COOPER:  Your Honor, first of all, defendants

8     disagree with the Court's assessment in terms of newly

9     discovered evidence.  But as a matter of record, let me

10    state that Rule 16 seems to indicate, as far as we are

11    concerned, that the use of a subpoena is available not just

12    for trial but for motions, and it is unclear, in our

13    opinion, as to whether or not that would apply to post

14    judgment attacks on the conviction or not.  It is part of

15    the defendant's basis or argument.  Be that as it may, I

16    understand your Honor has issued a ruling.

17          THE COURT:  Right.  I don't know what you mean by

18    "issued a ruling."  Any ruling I have issued has been made

19    on the record of the court or in writing.  I do not know of

20    any ruling to which you refer of that kind.  It is my view

21    that I have been asked to sign subpoenas, which I have

22    refused to sign, and I have not signed them because there

23    was no showing made to me of either the need for an

24    evidentiary hearing on a particular matter which was newly

25    uncovered after trial --

1          MR. COOPER:  I understand, your Honor.  Let me be

2    clear that, first of all, all the subpoenas that were issued

3    were issued on the names or on behalf of the defendants and

4    were not signed by the court, so there is no question about

5    that.  A number of the subpoenas were subpoenaed -- or a

6    number of the material was response to the subpoenas issued

7    during trial and not returned until after.  But I don't want

8    to get into the question whether they should have issued or

9    not.  I am making a request to the Court for a ruling as

10   follows.  I ask now that we are here for sentence if the

11   Court would make available that material now so that we may

12   pursue any remedy in the circuit.

13          THE COURT:  I don't know what material you are

14   speaking of, Mr. Cooper.  If there is any matter that you

15   wished to raise you could have made any motion you wanted to

16   make in writing.  I have received endless papers in this

17   case.  I don't understand an informal application at the

18   time of the sentence with respect to something you tell me

19   happened last spring.

20          MR. COOPER:  I apologize.  What I am trying to

21   indicate is, since this spring, any material that had been

22   subpoenaed by the defendants that was returned has been

23   accepted on behalf of the Court by Mrs. Vapper, according to

24   my chat with the subpoenaed records desk, brought to

25   chambers, and has not been released to the defendants.  What

6

1    I am asking is that material that your Honor is in

2    possession of --

3          THE COURT:  I don't even know I am in possession

4    of any such material.  I would have to look into the matter.

5    I am not familiar with such material, I do not know whether

6    there is any.  I have no reason to believe there is such

7    material in chambers, but anything is possible.

8          MR. COOPER:  Your Honor, having gone during the

9    course of the past number of months to check on the return

10   of the subpoenas and what was there, I have been advised by

11   the subpoena clerk that, for example, on November 21st, I

12   believe it was, four items were returned, four subpoenaed

13   items were returned that were signed out by Mrs. Vapper on

14   behalf of being taken to chambers.  That material has never

15   been released.

16         THE COURT:  I will be glad to look into the

17   question with Mrs. Vapper.

18         MR. COOPER:  Fine.  What I am asking is that any

19   material that has come back as a response to the subpoenas

20   after trial, I am asking the Court now make it available to

21   the defendants, if it is discovered in chambers.

22         THE COURT:  If I have any material in chambers, I

23   will file the material with the clerk for purposes of

24   preservation for appeal.  I understand that is the

25   application.

SOUTHERN DISTRICT REPORTERS 212-805-0300

1          MR. COOPER:  That is.

2          THE COURT:  Anything that I have, I will make

3    available to the Court of Appeals.

4          MR. COOPER:  That is the application.  There is

5    other material your Honor already has under seal preserved

6    for the circuit which goes back during trial.  That is fine.

7    And that takes care of that application.

8          THE COURT:  Good.

9          We will go through and figure out what you are

10   talking about, but whatever it is if I have anything in my

11   chambers that is available to be preserved, it will be

12   preserved.

13          What is next?

14          MR. COOPER:  That's it.  Whether Mr. Tellier

15   wishes to address the court is obviously up to him.

16          THE COURT:  Mr. Cooper, I am going to instruct

17   you to follow up on these deletions.

18          MR. COOPER:  The letter?

19          THE COURT:  Yes.

20          MR. COOPER:  I will, your Honor.

21          THE COURT:  We have a form for deletions, and

22   what I will do is attach this letter to it and direct these

23   deletions be made, but you should take that to the probation

24   office.

25          MR. COOPER:  Mr. Steele is here and I will

1    discuss it personally with him at this time and go from

2    there.

3            THE COURT:  All right.  Since you are here,

4    perhaps I don't have to fill out this form.

5            MR. STEELE:  Okay.

6            THE COURT:  It is my direction these matters be

7    deleted, and I certainly have not relied on them for any

8    purpose.

9            Very well.  Thank you.  Go ahead.

10           THE DEFENDANT:  Your Honor, I don't think it is

11   prudent at this time to say anything during sentencing as

12   there are a number of issues that are going to be raised

13   with the Second Circuit pertaining to a lot of documentation

14   that was withheld from us by the government.  The only thing

15   I ask the Court for is that I make a request that I be kept

16   on the east coast so I could possibly see my family,

17   considering the length of the sentence that I am going to be

18   given.

19           THE COURT:  That is something that I have very

20   little control over.  My understanding is that it is the

21   regular policy of the Bureau of Prisons to keep everybody as

22   close to his place of residence as possible, given the other

23   considerations, that is, I think that the Bureau of Prisons

24   has priorities about separating people, and about the nature

25   of the institution, and those I don't have an overview of.

1   I think that they do make an effort to put you as close to

2   your family and I don't know whether there are any

3   institutions on the east coast, actually, as is possible

4   given the other constraints.

5          THE DEFENDANT:  I believe there is a couple of

6   penitentiaries on the east coast that aren't too far.

7          THE COURT:  I don't know about the

8   classifications.

9          THE DEFENDANT:  All above level 6, as high a

10   level you can go.

11          THE COURT:  Then there certainly is some good

12   possibility that you will be assigned to the east coast if

13   that is the case.  Do you know where your brother has gone?

14          MR. COOPER:  He is in state custody at the

15   moment.  Your Honor you may recall there was the question of

16   where he will be kept.

17          THE COURT:  Right.  All right.  Then that is one

18   other concern that the federal authorities will not have.

19          MR. COOPER:  I should say, at least with respect

20   to Robin Tellier.  With respect to Roy Tellier he is in

21   federal custody.

22          THE COURT:  I understand.

23          All right.  I assume that the government has

24   nothing to add here.

25          MR. GARDEPHE:  No, your Honor.  Obviously, we

1   feel the appropriate sentence is life, life plus the

2   mandatory 25 years consecutive for the gun counts.  I don't

3   think there is anyone that could read that presentence

4   report and conclude that any other sentence was appropriate

5   under the circumstances.

6           THE COURT:  Right.  And since I sat through the

7   trial, I don't really need to rely on the presentence

8   report.

9           You heard what I told your brother because you

10   were present.

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  I am not going to repeat that now,

13   because in some ways your situations are not identical.

14   That is, you are different people.  Unfortunately, you have

15   not engaged in different kinds of activity.  You have both,

16   for different reasons perhaps, really been dangers to

17   society.  And I don't say that lightly.  Many, many people

18   have been seriously hurt by your antisocial activity.  And

19   that certainly is true of all of the young men who followed

20   your brother and to some extent followed you.

21           Into the kind of conduct that cannot be justified

22   and is difficult even to explain, over a long period of

23   time, and it is in many ways tragic that young men should

24   throw their lives away while they were throwing away the

25   lives of others.  That is indeed tragic.

1          But ultimately, society has to be protected.  You

2   are an intelligent enough man to know that although the

3   penalties which the law requires are very heavy, yours was

4   the kind of conduct that merits heavy penalties, because the

5   purpose of a life sentence is to protect society,

6   essentially to separate from society those people who are

7   unable to curb their own worst instincts in dealing with

8   other people.

9          So although it is very sad, indeed tragic, that a

10  man so young should look forward to a life in prison, it is

11  also just in this case.  I do sentence you to life in

12  prison, followed by five years on count four, and 20 years

13  on count 6.  There is a $350 special assessment.  And there

14  is very little else that I can tell you.  I hope that you

15  will spend your time in prison pursuing the talents,

16  constructive talents.  That you do have.  But only you can

17  decide how you are going to live for the rest of your life.

18          Is there anything further?

19          MR. GARDEPHE:  Your Honor, on the counts that

20  have a twenty-year maximum, I take it your Honor's intent is

21  to impose a sentence at the statutory maximum.

22          THE COURT:  That's correct.  I should spell that

23  out.

24          On counts 1 and 2, the sentence is life.  On

25  counts 3, 5, and 7, it is a concurrent sentence of 20 years.

12

1   On counts 4 there is a five-year consecutive sentence and on

2   count 6 a 20-year consecutive sentence after that.

3           MR. GARDEPHE:  Thank you, your Honor.

4           THE COURT:  Very well.

5           MR. GARDEPHE:  For the record, your Honor you

6   probably should advise the defendant of his right to appeal.

7           THE COURT:  I am sure you understand, Mr.

8   Tellier, you have a right to appeal your conviction, your

9   sentence, and indeed anything else.

10          MR. COOPER:  Mr. Tellier is well aware of it.  I

11  have indicated to him I will file the appropriate notice on

12  his behalf.

13          THE COURT:  Thank you.

14          MR. GARDEPHE:  Thank you, your Honor.

15                          o0o

16

17

18

19

20

21

22

23

24

25