UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
  UNITED STATES OF AMERICA,

                                             92 Cr. 869 (LGS)

              -against-

                                         **OPINION AND ORDER**

  RENE TELLIER,

                        Defendant.
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Defendant, a sixty-three-year-old inmate at USP Canaan,[1] moves *pro se*[2] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The Government opposes the motion. For reasons discussed below, Defendant's motion for a sentence reduction to time served is granted.

## I.    BACKGROUND

      The relevant facts are substantially undisputed. Defendant has been incarcerated since January 1990 for almost thirty-five years. Defendant helped lead a criminal organization known as the "Tellier Organization" that operated in the tri-state area at least through the late 1970s through the early 1990s. Defendant committed four murders and one attempted murder in connection with his role in the Tellier Organization. Defendant and his co-conspirators also committed "smash and grab" robberies of commercial establishments, driving cars or vans through the front windows or doors of stores selling luxury goods, or broke into stores or warehouses by other means. Defendant

---

[1] Defendant spent a majority of his sentence at USP Allenwood and was only recently moved to USP Canaan.
[2] On May 5, 2023, the Court granted Defendant's motion to appoint Mr. Florian Miedel as counsel for purposes of, *inter alia*, seeking relief under 18 U.S.C. § 3582(c)(1)(A). At that time, the present motion -- filed *pro se* -- was fully briefed. Defendant was granted leave to refile his motion with the assistance of counsel. Defendant chose not to refile.

fired a handgun at security guards on multiple occasions. And to divert the police's attention from the robberies, Defendant placed calls falsely reporting crimes at other locations.

Defendant was arrested on a state bench warrant in January 1990. He was serving state sentences imposed in 1991 when he was arrested for the instant offense in November 1992. In 1994, Defendant was convicted of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), a substantive violation of RICO for which the underlying predicate acts included murder, robbery, bribery and conspiracy to distribute cocaine and marijuana, two counts of conspiracy to commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951, two counts of possessing a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c), which were predicated on the Hobbs Act Robbery conspiracy counts, and traveling across state lines with intent to commit murder. *Tellier v. United States*, No. 19 Civ. 11262, 2021 WL 4555058, at *1 (S.D.N.Y. Oct. 5, 2021). The jury found that Defendant had committed all of the charged racketeering predicate acts. In December 1994, Defendant was sentenced to concurrent life sentences on the two RICO counts, a sixty-year concurrent sentence for the robbery conspiracy and murder-for-hire counts, and five- and twenty-year consecutive sentences on the § 924(c) counts. *Tellier v. United States*, No. 21-2959-CV, 2023 WL 3608394, at *1 (2d Cir. May 24, 2023).

On direct appeal, the Second Circuit affirmed Defendant's conviction in May 1996 by summary order. *See United States v. Tellier*, 83 F.3d 578, 579 (2d Cir. 1996). On October 19, 1997, Defendant filed a habeas petition under 18 U.S.C. § 2255 on the grounds of ineffective assistance of counsel and prosecutorial misconduct. Following a series of amendments to the petition, the petition was denied on September 20, 2006. *Tellier v. United States*, No. 97 Civ. 8747, 2006 WL 2707371, at *11 (S.D.N.Y. Sept. 20, 2006). In 2019, the Second Circuit granted Defendant leave to file a successive § 2255 petition on the ground that his § 924(c) conviction could no longer stand in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319

(2019). *See Tellier,* 2021 WL 4555058, at *1. On October 5, 2021, Defendant's successive § 2255 petition was granted in part and denied in part. *Id.* at *3. Defendant's § 924(c) conviction was vacated, but the Court declined to resentence Defendant. *Id.* On May 10, 2022, the Second Circuit granted Defendant's motion for a certificate of appealability. The sole issue on appeal was whether the Court "misapprehended its authority to resentence [Defendant] de novo on the non-section-942(c) counts." *Tellier*, 2023 WL 3608394, at *1.[3]

On January 3, 2023, while his case was on appeal, Defendant filed *pro se* the present motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), with letters of support from family members, friends, current and former inmates and former Bureau of Prisons ("BOP") employees. The Government opposes the motion.

On May 24, 2023, the Second Circuit remanded Defendant's case pursuant to the procedure set out in *United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994), so that the Court could "consider and provide a reasoned explanation as to whether its denial of [Defendant's] request for de novo sentencing was based on an exercise of discretion, or whether the court believed that it lacked authority to even consider resentencing on the remaining counts." *Tellier*, 2023 WL 3608394, at *2. On June 20, 2023, Defendant filed a motion to withdraw his appeal. On June 28, 2023, the Second Circuit granted the motion. With Defendant's appeal dismissed, this Court has jurisdiction to decide the present motion.

**II.   STANDARD**

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018. Under that provision, a court may

---

[3] On October 13, 2022, Defendant filed a new § 2255 petition. On May 9, 2023, at Defendant's request, the petition was denied without prejudice to renewal at a later date, if necessary, with the assistance of counsel.

3

reduce a sentence upon a finding that (1) an inmate exhausted his administrative remedies by requesting relief from prison authorities; (2) "extraordinary and compelling reasons warrant such a reduction" and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). Under the First Step Act, a court may exercise its "discretion in determining what are extraordinary circumstances." *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). The defendant bears the burden of showing he is entitled to a sentence reduction. *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021). If the defendant establishes extraordinary or compelling circumstances, a court must still consider the § 3553(a) sentencing factors "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also Keitt*, 21 F.4th at 71. Those factors include "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;" (4) "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(2), (6); *see also Keitt*, 21 F.4th at 71.

Because Defendant filed his motion *pro se*, the motion is construed liberally and read as raising the strongest arguments it suggests. *See United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020).

### III. DISCUSSION

The parties do not dispute that Defendant has exhausted his administrative remedies. For the reasons discussed below, the Court finds that extraordinary and compelling circumstances

4

warrant a sentence reduction, that Defendant is no longer a danger to the safety of any other person or to the community and that the sentencing factors set forth in § 3553(a) weigh in his favor.

### A. Extraordinary and Compelling Circumstances

Defendant, like his brother, *see Tellier*, 2022 WL 1468381, at *3,[4] has shown extraordinary and compelling reasons that justify a sentence reduction to time served. "[A] district court's discretion in this area -- as in all sentencing matters -- is broad." *Brooker*, 976 F.3d at 237. "Where no single factor alone may justify release, the total circumstances may still rise to the level of extraordinary and compelling reasons for release." *United States v. Resto*, No. 8 Cr. 757, 2021 WL 1109467, at *2 (S.D.N.Y. Mar. 23, 2021).[5] Although "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason," it is a factor that district courts may consider in deciding whether to reduce a sentence. *Brooker*, 976 F.3d at 238. Here, Defendant's rehabilitation, severe prison conditions and duration of his sentence already served together satisfy the extraordinary and compelling standard.

The weight of evidence of Defendant's rehabilitation is remarkable, especially given his life sentence. Since 1994 when he was sentenced, Defendant has been a model inmate, committed to self-improvement and helping others inside and outside his prison community. During his incarceration, Defendant completed his GED, served as a Bible study coordinator and taught over 1500 hours of religious studies, completed numerous vocational and educational programs and completed the "Challenge Program" -- an in-residency program designed to facilitate favorable

---

[4] Last year, on May 10, 2022, the Court granted a similar motion brought by Defendant's brother and co-defendant Robin Tellier. *See United States v. Tellier*, No. 92 Cr. 869, 2022 WL 1468381, at *7 (S.D.N.Y. May 10, 2022). Robin Tellier was convicted of comparable crimes except had greater culpability as the leader, had an equally praiseworthy record of rehabilitation and was sentenced to similar terms of imprisonment, which included a life sentence, four twenty-year consecutive terms and concurrent terms of imprisonment of twenty years, ten years and five years. *Id.* at *1, 3-4.
[5] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

institutional adjustment and successful reintegration to the community through the elimination of drug abuse and the elimination/management of mental illnesses. In addition to his educational pursuits, Defendant has held numerous work details, including with the prison's religious services department, as a sound technician, in the prison law library as a law clerk and in other jobs without pay, and maintained good work performance evaluations. One supervisor in a letter described Defendant as "very punctual," that he "always had a positive, upbeat attitude," that he took initiative "[w]ithout supervisory instruction" and was, overall, "an exceptional employee and always willing to assist co-workers and staff with whatever task needed completed." Defendant also dedicated substantial time and effort to creative endeavors. He created a drama club in the prison's chapel to write plays for the population and played over 1,000 hours of music with his band for many of the prison graduation ceremonies, religious services and other concerts. According to one former inmate, Defendant facilitated "many live shows where he coordinated men there to act out scenes he would write to show live scenes to a crowd of men of prison life, and carefully crafted the scenes to show them how to analyze and challenge their decisions while there in prison" -- basically, on "how to strengthen and develop their rational and cognitive thinking skills."

While incarcerated in some of the country's most dangerous facilities, Defendant incurred only one disciplinary infraction in the past twenty-four years: a non-violent infraction for possession of contraband which, Defendant argues, belonged to his roommate. Courts have granted compassionate release on similar disciplinary records. *See, e.g.*, *United States v. Ramirez*, 571 F. Supp. 3d 40, 50-52 (S.D.N.Y. 2021) (granting compassionate release motion where defendant completed significant number of hours of accredited programs and committed four minor infractions while incarcerated).

As a "jailhouse lawyer," Defendant dedicated thousands of hours to helping others in prison and assisted over 300 inmates in their cases. A current inmate stated in his letter that Defendant had

never turned away a person who needed assistance with legal work and had continued to work on cases even after people transferred to another facility, and that the writer personally knew of several cases where Defendant's advocacy was successful.  Another individual noted that Defendant "has always been an advocate for me" and "assisted me with legal work in order to get released.  Even to this day, he still calls me regularly to make sure that I'm staying out of trouble."  In 2007, Defendant started a legal course that the prison education department made available to the general population called "The ABC's of Legal Brief Writing."  The curriculum, among other things, explained how to research a legal issue, described the different standards of review and explained how to outline a memorandum of law.  Enrollment for the course was so successful that Defendant taught classes back-to-back.

      Friends, family and fellow inmates consistently describe Defendant as a dedicated father, loyal friend, role model and spiritual leader.  All reports highlight his extremely positive outlook on life despite his difficult circumstances.  As one fellow inmate commented, Defendant is a "big brother figure to the other inmates" and "leads through example by practicing a strong work ethic and does things out of friendship and never asks for anything in return."  Inmates view him as a mentor who seeks to guide others and to steer their lives away from trouble and criminal tendencies.  Many attribute their own successful rehabilitation to his positive influence.

      Defendant's thirty-four-year-old daughter writes that he is a loving father, even from prison.  She is grateful to have Defendant in her life, considers Defendant her best friend, and notes that he is "there whenever I need to speak with him and always has the right things to say."  She believes her father will be a great asset to their family, and vows to help him transition back into society in the event of his release.  Other friends and family vow the same, promising to support Defendant by providing among other things employment, financial support and a place to live.

The over thirty letters written in support of Defendant's release, along with Defendant's own letter to the Court, show that he has turned his life around. While legally insufficient on its own, Defendant's strong record of rehabilitation weighs in favor of finding extraordinary and compelling circumstances.

Although the harsh conditions of confinement also, on their own, do not constitute extraordinary and compelling reasons, courts have recognized that the pandemic made "incarceration harsher and more punitive than would otherwise have been the case." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020); *see also United States v. Rengifo*, 569 F. Supp. 3d 180, 197 (S.D.N.Y. 2021) (finding that the "unanticipated severity" of lockdown conditions "constitutes another circumstance that" in combination with other factors "collectively amounts to an extraordinary and compelling reason for early release"). Here, in addition to harsh conditions that Defendant experienced prior to the pandemic, Defendant has most recently endured extended lockdowns and suspended or limited access to visitors such as family members and attorneys and to rehabilitative, therapeutic, religious and recreational programs. Defendant is sixty-three years old and has a serious, chronic heart condition. These factors weigh in favor of finding extraordinary and compelling reasons.

The substantial amount of time that Defendant has served also weighs in favor of a sentence reduction. *See Brooker*, 976 F.3d at 238; *United States v. Vargas*, 502 F. Supp. 3d 820, 826-27 (S.D.N.Y. 2020) (collecting cases). The almost thirty-five years Defendant has served is just punishment for the extremely serious offenses for which he was convicted. Courts in this circuit have granted compassionate release to prisoners serving life sentences notwithstanding convictions for heinous crimes. *See, e.g.*, *United States v. Fisher*, 493 F. Supp. 3d 231, 236, 239 (S.D.N.Y. 2020) (granting release after thirty-eight years of defendant who likely murdered multiple victims during course of significant drug trafficking conspiracy); *Rodriguez*, 492 F. Supp. 3d at 308

(reducing sentence to thirty years where defendant participated in torture and murder of government informant).

Although the Government "continues to believe that the rehabilitation, coupled with a lengthy period of incarceration that spanned the COVID-19 pandemic does not constitute a compelling and extraordinary reason for reason," the Government "acknowledges that [Defendant] is similarly situated to Robin [Tellier] in the respects that this Court found extraordinary and compelling reasons for release." Accordingly, the Court finds that while Defendant's extraordinary rehabilitation, harsh prison conditions and lengthy imprisonment would alone be insufficient, together they present an extraordinary and compelling reason for Defendant's sentence reduction. *See Tellier*, 2022 WL 1468381, at *5 (S.D.N.Y. May 10, 2022); *see also, e.g.*, *Fisher*, 493 F. Supp. 3d at 235-36 (finding that the sum of defendant's age, health conditions, particularized COVID-19 risk and exceptional rehabilitation efforts constituted extraordinary and compelling reasons); *United States v. Qadar*, No. 00 Cr. 603, 2021 WL 3087956, at *8 (E.D.N.Y. July 22, 2021) (finding that the combination of defendant's medical conditions and effects of prolonged COVID lockdown, family circumstances, good character, rehabilitation, and prison accolades constituted extraordinary and compelling reasons).

**B. Sentencing Commission's Policy Statements and Section 3553(a) Factors**

Defendant's release following almost thirty-five years of imprisonment satisfies the goals of sentencing and factors stated 18 U.S.C. § 3553(a). Section 3553(a) provides that a sentence should be "sufficient, but not greater than necessary," and that courts must consider, among other factors, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;" (4) "the need for

9

the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(2), (6); *see also Keitt*, 21 F.4th at 71. "The weight to be afforded any § 3553(a) factor is a matter firmly committed to the discretion of the sentencing judge." *Keitt*, 21 F.4th at 72 (quoting *United States v. Verkhoglyad*, 516 F.3d 122, 131 (2d Cir. 2008)).

The first several factors under § 3553(a) are discussed above. Section 3553(a)(1) requires considerations of the nature and circumstances of the offense, along with the defendant's history and characteristics. All agree that Defendant was convicted of extremely serious crimes, including predicate acts of murder for purposes of RICO, which occurred in 1987 when Defendant was twenty-seven years old. It is also undisputed that Defendant's conduct and rehabilitation since the offense have been laudable, as detailed above. The Government's main contention is that Defendant's case is "markedly different from Robin's with respect to the § 3553(a) factors" because while Robin committed one murder and attempted another, Defendant committed four murders and attempted a fifth -- the context and specific facts of which make early release inappropriate. Acknowledging the heinous nature of his conduct, the Court is nevertheless unpersuaded. Defendant is not the same person he was thirty-six years ago. The difference between the two halves could not be more pronounced. Defendant has, as he describes, "made a conscientious choice to make up for [his] past sins and to live differently." He by all accounts has been a manifestly model inmate, a mentor to countless young men in custody, and an active and devoted father and grandfather, all while under the specter of a life-without-parole sentence. Defendant is now sixty-three years old, suffers from a serious, chronic heart condition and is deeply remorseful for his very serious offenses. And although a decision to reduce a sentence is never taken lightly,

courts have granted such motions where defendants' rehabilitation was extraordinary, even when the underlying conviction involved multiple or particularly violent murders. *See, e.g.*, *United States v. Monteleone*, No. 92 Cr. 351, 2023 WL 2857559, at *6 (E.D.N.Y. Apr. 10, 2023) (granting compassionate release motion where defendant committed two murders); *United States v. Underwood*, No. 88 Cr. 822, 2021 WL 3204834, at *1 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release motion where at least five, brutal murders were committed at defendant's direction); *Ramirez*, 571 F. Supp. 3d at 42, 52 (reducing forty-eight-year sentence by eight years where defendant was leader of drug trafficking organization and was personally involved in two murders); *Rodriguez*, 492 F. Supp. 3d at 308. As one court observed, Defendant's "history and characteristics did not freeze on the day of his arrest and incapacitation," and "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors." *See Underwood*, 2021 WL 3204834, at *6 (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)). Here, Defendant's present-day characteristics and post-sentencing history weigh heavily in favor of release.

Section 3553(a)(2)(A) recognizes "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." As discussed above, Defendant's over three decades in prison has already served all of these purposes. *See United States v. Wong Chi Fai*, No. 93 Cr. 1340, 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019) ("[N]otwithstanding the seriousness of [defendant's] criminal conduct," the sentence served (twenty-six years of a life sentence) "appropriately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.").

Section 3553(a)(2)(C) recognizes "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." At sentencing, Judge Cederbaum was particularly concerned with the fact that "[m]any, many people have been seriously hurt by [Defendant's]

antisocial activity," especially "all of the young men who followed [his] brother and to some extent followed [Defendant]."  Here, it is undisputed that Defendant has not engaged in a single act of violence since he was incarcerated.  To the contrary, the letters submitted by inmates describe Defendant as a productive and compassionate inmate who is committed to personal growth and serving his community.  Defendant's age, near spotless disciplinary record and strong support from family and friends, all strongly suggest that he is unlikely to recidivate.  *See* U.S. Sentencing Comm., The Effects of Aging on Recidivism Among Federal Offenders, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf [https://perma.cc/S95U-MC7F]; *see also United States v. Piggott*, No. 94 Cr. 417, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age."); *United States v. Bass*, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020) (citing to the Sentencing Commission's guidelines to support the unlikelihood of defendant's recidivism given his advanced age, and noting defendant's "mostly clean disciplinary record from his time in prison" and that defendant's ability to "largely follow[] the rules while incarcerated suggests that he will do so once released, which minimizes the danger he poses to the community"); *United States v. Scott*, 239 F. Supp. 3d 629, 635 (E.D.N.Y. 2017) ("[Defendant's] strong family support and good job prospects make recidivism unlikely.").

Section 3553(a)(2)(D) addresses "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  The sentence served has already accomplished this end, as Defendant has furthered his educational and vocational training, including by completing his GED and over thirty educational programs, as well as teaching over 1500 hours of religious studies and working numerous jobs.  The letters and inmate education transcript show that Defendant has taken full advantage of the educational and vocational opportunities offered in prison.

Finally, reducing Defendant's sentence will achieve the aim of § 3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." A reduction would not create a disparity among co-defendants as all of Defendants' co-defendants have been released.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for a sentence reduction to time served is **GRANTED**. By **August 31, 2023**, the parties shall confer with the U.S. Probation Office and file a joint letter (i) advising the earliest date Defendant can be produced for a resentencing hearing and (ii) proposing restrictive and monitoring conditions, noting any conditions in dispute. By **August 31, 2023**, Defendant shall file a detailed written reentry plan after consultation with the U.S. Probation Office.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 525.

Dated: August 25, 2023
       New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**